# No. 23-2853

## In the United States Court of Appeals
### FOR THE EIGHTH CIRCUIT

DANIEL'LA DEERING

*Plaintiff-Appellant*

v.

LOCKHEED MARTIN, a Maryland Corporation

*Defendant-Appellee*

Maryanne Lavan, an individual; Kenneth Bastian, an individual

*Defendants*

On Appeal from the U.S. District Court for the District of Minnesota
No. 0:20-cv-01534-DSD, The Honorable David S. Doty

## BRIEF OF APPELLEE

MICHAEL S. BURKHARDT
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5000

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-3000

JOSEPH G. SCHMITT
NILAN JOHNSON LEWIS PA
250 Marquette Avenue South, Suite 800
Minneapolis, MN 55401
(612) 305-7500

*Counsel for Appellee Lockheed Martin Corporation*

## SUMMARY OF THE CASE

Plaintiff Daniel'la Deering, a practicing attorney for over 25 years, was discharged from an in-house counsel position at Defendant Lockheed Martin Corporation because she disclosed attorney-client-privileged communications and sensitive information without the company's permission. She then filed this lawsuit alleging race discrimination and retaliation. The District Court granted summary judgment against her race-discrimination claim, but permitted the retaliation claim to proceed.

Just before trial, however, Lockheed Martin learned that Deering had engaged in a long course of deception during the litigation. For 19 months, through a series of misrepresentations, false sworn verifications, false deposition testimony under oath, and false submissions to the District Court, Deering intentionally concealed evidence about her post-Lockheed Martin employment that dramatically reduced her potential damages. The District Court found that Deering's misconduct was intentional, willful, and in bad faith—particularly given her legal education and experience—and dismissed her case as a sanction, in keeping with settled Eighth Circuit precedent.

Lockheed Martin believes the legal issues in this case are straightforward and not novel and can be decided on the briefs. But the Court may benefit from oral argument given the case's long factual and procedural history. Defendants believe that 15 minutes for each side would be ample time.

i

**CORPORATE DISCLOSURE STATEMENT**

In accordance with Federal Rule of Appellate Procedure 26.1 and Local Appellate Rule 26.1A, Appellee Lockheed Martin states that it does not have a parent company, and that State Street Corporation, directly or indirectly through subsidiaries, owns at least 10% of Lockheed Martin's stock.

ii

# TABLE OF CONTENTS

SUMMARY OF THE CASE.....................................................................................i

CORPORATE DISCLOSURE STATEMENT ........................................... ii

TABLE OF AUTHORITIES ...................................................................vi

INTRODUCTION ...................................................................................1

STATEMENT OF JURISDICTION.........................................................5

STATEMENT OF THE ISSUES..............................................................7

STATEMENT OF THE CASE..................................................................8

    I.    Deering, an experienced in-house attorney, is discharged for
        unauthorized disclosure of attorney-client privileged and
        sensitive materials. ...................................................................8

    II.    The District Court rejects Deering's discrimination claim at
        summary judgment but allows her retaliation claim to proceed
        to trial...................................................................................11

    III.    Lockheed Martin discovers on the eve of trial that Deering has
        lied about her post-Lockheed Martin employment and inflated
        her claimed damages. ..............................................................12

    IV.    The District Court dismissed Deering's case because of her
        repeated willful misrepresentations to Lockheed Martin and the
        District Court...........................................................................17

    V.    After dismissing the case, the District Court denied Deering's
        motion for permission to seek reconsideration. ..................................19

    VI.    The District Court awarded part of the attorney's fees Lockheed
        Martin incurred as a result of Deering's sanctionable
        misconduct...............................................................................21

SUMMARY OF ARGUMENT ................................................................21

STANDARD OF REVIEW .....................................................................23

ARGUMENT ........................................................................................24

Appellate Case: 23-2853    Page: 4    Date Filed: 01/18/2024 Entry ID: 5354401

I.    The District Court did not abuse its discretion in dismissing
      Deering's lawsuit for her abuse of the judicial process. .....................24

      A.    The District Court did not abuse its discretion in finding
            that Deering had engaged in an extended pattern of
            deliberate dishonesty warranting dismissal. ............................25

      B.    Deering's counterarguments are meritless................................28

            1.    The District Court was under no obligation to issue
                  a discovery order before imposing the dismissal
                  sanction. ........................................................................28

            2.    The District Court considered and properly
                  rejected less severe sanctions. ........................................29

            3.    Deering cannot shift the blame for her misconduct
                  onto her former lawyers..................................................31

II.   The District Court did not abuse its discretion in refusing to
      continue the sanctions hearing. ............................................................33

III.  The District Court did not abuse its discretion in denying
      Deering's unsupported request for leave to move for
      reconsideration. ....................................................................................37

IV.   The District Court did not abuse its discretion in granting part
      of the attorney's fees amount that Lockheed Martin requested.........38

V.    The District Court's prior grant of partial summary judgment
      provides no basis for reversal..............................................................41

      A.    Deering did not make a *prima facie* case because she
            failed to show that she was qualified for senior, non-
            labor-and-employment roles. ....................................................43

      B.    Lockheed Martin showed that it selected other candidates
            because it believed they were more qualified than
            Deering.........................................................................................47

Appellate Case: 23-2853     Page: 5     Date Filed: 01/18/2024 Entry ID: 5354401

# TABLE OF CONTENTS
(continued)

C.    Deering did not establish that Lockheed Martin's reason for selecting other candidates was pretextual. ..........................49

CONCLUSION ...............................................................................55

CERTIFICATE OF COMPLIANCE ......................................................57

CERTIFICATE OF SERVICE .............................................................58

Appellate Case: 23-2853    Page: 6    Date Filed: 01/18/2024 Entry ID: 5354401

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.J. ex rel. L.B. v. Kierst,*
    56 F.3d 849 (8th Cir. 1995) ................................................................41

*Actors' Equity Ass'n v. Am. Dinner Theatre Inst.,*
    802 F.2d 1038 (8th Cir. 1986) ..........................................................39

*Antonich v. U.S. Bank Nat'l Ass'n,*
    No. 14-cv-710, 2015 WL 4771551 (D. Minn. Aug. 13, 2015) ........43

*Ayoubi v. Dart,*
    640 F. App'x 524 (7th Cir. 2016) ......................................................29

*Bennett v. Nucor Corp.,*
    656 F.3d 802 (8th Cir. 2011) ......................................................47, 54

*Bergstrom v. Frascone,*
    744 F.3d 571 (8th Cir. 2014) ............................................................30

*Black v. Indep. Sch. Dist. No. 316,*
    476 F. Supp. 2d 1115 (D. Minn. 2007) ......................................42, 43

*Boogaerts v. Bank of Bradley,*
    961 F.2d 765 (8th Cir. 1992) ......................................................24, 32

*Boston v. TrialCard, Inc.,*
    75 F.4th 861 (8th Cir. 2023) ............................................................55

*Brewington v. Keener,*
    902 F.3d 796 (8th Cir. 2018) ............................................................41

*Brown v. Oil States Skagit Smatco,*
    664 F.3d 71 (5th Cir. 2011) ........................................................30, 31

*Carter v. Atrium Hosp.,*
    997 F.3d 803 (8th Cir. 2021) ......................................................47, 55

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ..........................................................................42

vi

Appellate Case: 23-2853    Page: 7    Date Filed: 01/18/2024 Entry ID: 5354401

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)....................................................................................24

*Chock v. Nw. Airlines, Inc.*,
113 F.3d 861 (8th Cir. 1997) ...............................................................55

*Chrysler Corp. v. Carey*,
186 F.3d 1016 (8th Cir. 1999) ....................................................*passim*

*Cox v. First Nat'l Bank*,
792 F.3d 936 (8th Cir. 2015) ...............................................................55

*Davis v. KARK-TV, Inc.*,
421 F.3d 699 (8th Cir. 2005) ...............................................................51

*DuBose v. Minnesota*,
893 F.2d 169 (8th Cir. 1990) .................................................................6

*EEOC v. Wal-Mart Stores, Inc.*,
187 F.3d 1241 (10th Cir. 1999) ............................................................6

*Estes v. Dick Smith Ford, Inc.*,
856 F.2d 1097 (8th Cir. 1988) .............................................................53

*Fox v. Studebaker-Worthington, Inc.*,
516 F.2d 989 (8th Cir. 1975) .......................................................28, 29

*Gleghorn v. Melton*,
195 F. App'x 535 (8th Cir. 2006) ......................................................30

*Grunewald v. Mo. Pac. R.R. Co.*,
331 F.2d 983 (8th Cir. 1964) .........................................................7, 36

*Hagerman v. Yukon Energy Corp.*,
839 F.2d 407 (8th Cir. 1988) ...............................................................38

*Home Design Servs., Inc. v. Schwab Dev. Corp.*,
No. 03-cv-596, 2007 WL 2902963 (M.D. Fla. Oct. 2, 2007)...........40

Appellate Case: 23-2853     Page: 8     Date Filed: 01/18/2024 Entry ID: 5354401

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Hunt v. City of Los Angeles*,
638 F.3d 703 (9th Cir. 2011) ............................................................6

*Hunt v. City of Minneapolis*,
203 F.3d 524 (8th Cir. 2000) .......................................................30, 39

*Keefer v. Provident Life & Acc. Ins. Co.*,
238 F.3d 937 (8th Cir. 2000) ...........................................................30

*Knapp v. Convergys Corp.*,
209 F.R.D. 439 (E.D. Mo. 2002) ...................................................27, 28

*Koors v. Great Sw. Fire Ins. Co.*,
530 N.E.2d 780 (Ind. Ct. App. 1988) ...........................................35, 36

*League of Women Voters of Mo. v. Ashcroft*,
5 F.4th 937 (8th Cir. 2021) .......................................................8, 23, 41

*Link v. Wabash R.R. Co.*,
370 U.S. 626 (1962).......................................................................32

*Lyoch v. Anheuser-Busch Cos.*,
139 F.3d 612 (8th Cir. 1998) ...........................................................46

*Martin v. DaimlerChrysler Corp.*,
251 F.3d 691 (8th Cir. 2001) .....................................................*passim*

*Mathenia v. Delo*,
99 F.3d 1476 (8th Cir. 1996) ...........................................................23

*McPheeters v. Black & Veatch Corp.*,
427 F.3d 1095 (8th Cir. 2005) .....................................................53, 54

*Nelson v. USAble Mut. Ins. Co.*,
918 F.3d 990 (8th Cir. 2019) ...........................................................55

*Nolting v. Yellow Freight Sys., Inc.*,
799 F.2d 1192 (8th Cir. 1986) ...........................................................32

Appellate Case: 23-2853     Page: 9     Date Filed: 01/18/2024 Entry ID: 5354401

*Ottman v. City of Independence*,
    341 F.3d 751 (8th Cir. 2003) ...............................................................43

*Pope v. Fed. Express Corp.*,
    974 F.2d 982 (8th Cir. 1992) ......................................................24, 28

*Preston v. City of Pleasant Hill*,
    642 F.3d 646 (8th Cir. 2011) ...............................................................37

*Qu v. Bd. of Regents of Univ. of Minn.*,
    No. 08-cv-1843, 2009 WL 2900334 (D. Minn. Sept. 2, 2009) ..........................44

*Rose-Maston v. NME Hosps., Inc.*,
    133 F.3d 1104 (8th Cir. 1998) ..........................................8, 43, 47, 49

*Ross v. Lockheed Martin Corp.*,
    No. 16-cv-2508 (KBJ), 2020 WL 4192566 (D.D.C. July 21, 2020)..................52

*Sallis v. Univ. of Minn.*,
    322 F. Supp. 2d 999 (D. Minn. 2004)...................................................47

*Sandoval v. Am. Bldg. Maint. Indus. Inc.*,
    578 F.3d 787 (8th Cir. 2009) ...............................................................54

*Sere v. Bd. of Trs. of Univ. of Ill.*,
    852 F.2d 285 (7th Cir. 1988) .................................................................6

*Siems v. City of Minneapolis*,
    560 F.3d 824 (8th Cir. 2009) ...............................................................32

*SPV-LS, LLC v. Transamerica Life Ins. Co.*,
    912 F.3d 1106 (8th Cir. 2019) ..............................................7, 23, 37

*Stephens v. Jessup*,
    793 F.3d 941 (8th Cir. 2015) .................................................................5

*Thoms v. McDonald's Corp.*,
    No. 03-cv-2465, 2003 WL 22901686 (D. Minn. Nov. 26, 2003) ...............25, 28

ix

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Torgerson v. City of Rochester*,
    643 F.3d 1031 (8th Cir. 2011) ................................................................*passim*

*United States v. Keepseagle*,
    30 F.4th 802 (8th Cir. 2022) ................................................................7, 23, 33

*United States v. Keiser*,
    578 F.3d 897 (8th Cir. 2009) ................................................................33

*United States v. Vesey*,
    330 F.3d 1070 (8th Cir. 2003) ................................................................35

*Young v. Builders Steel Co.*,
    754 F.3d 573 (8th Cir. 2014) ................................................................42

**STATUTES**

28 U.S.C.
    § 1291................................................................5
    § 1331................................................................5

False Claims Act ................................................................46, 48, 51

Foreign Corrupt Practices Act ................................................................46, 48, 49, 51

**RULES**

FED. R. APP. P. 3................................................................5

FED. R. CIV. P.
    26................................................................2, 3, 12
    37................................................................6, 28, 29, 40
    54................................................................39

Appellate Case: 23-2853    Page: 11    Date Filed: 01/18/2024 Entry ID: 5354401

## INTRODUCTION

Daniel'la Deering worked for many years as in-house counsel for Lockheed Martin, focusing on labor and employment work. In 2018, after receiving a slightly lower performance rating than the prior year, Deering filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). She contended, among other things, that her performance review was discriminatory based on her race. In fact, she received a slightly lower rating because she was responsible for a single-plaintiff employment lawsuit that resulted in a $51.6 million adverse jury verdict. Her white supervisor received the same performance rating for the same reason.

Far from just filing a charge, Deering removed hundreds of pages of documents from Lockheed Martin, many of which contained attorney-client privileged communications and sensitive information, and attached them to her EEOC charge without redactions. Deering was aware that such documents would be available to the public but took no steps to protect the attorney-client privilege or the sensitive information. While Deering had every right to file an EEOC charge—baseless though it was—she had no right to engage in self-help by removing privileged and sensitive materials from Lockheed Martin and inject them into a public forum without any protective measures. After an investigation, Lockheed Martin terminated

1

Deering's employment for this improper breach of her duties to the company and her ethical responsibilities as an attorney. The termination prompted this lawsuit.

After the District Court properly granted summary judgment on Deering's race-discrimination claims, the parties geared up for trial on her retaliation claim. In June 2023, three weeks before the scheduled start of trial, Lockheed Martin moved in limine to exclude evidence of lost-wages damages after August 2021. Lockheed Martin argued that Deering had failed to provide required Rule 26 damages calculations and evidence of her post-Lockheed Martin employment efforts beyond August of 2021. For example, Deering had not provided updated and complete earnings and benefits documents from what she had represented as her "current employer," nVent. Lockheed Martin did not know it, but nVent was no longer Deering's current employer. She had not worked at nVent for over 19 months. Rather, she had accepted a much higher-paying job, with a company called Anaplan, on October 12, 2021, and had left nVent on October 22, 2021. This more lucrative employment significantly reduced Deering's economic damages. Yet at no point between October 2021 and June 2023 did she disclose this significant change in jobs.

Worse than that, Deering affirmatively lied about her employment. She repeatedly offered false testimony at her November 1, 2021, deposition, just weeks after accepting her new job. She testified under oath that she was "currently employed" at nVent, described her job duties and reporting structure, and testified that

she had not made any efforts since February 2021 to secure different employment. Even after the deposition, Deering continued to represent that she was working at nVent under the same compensation arrangement. In March 2022, five months into her Anaplan employment, Deering submitted a declaration and resume in opposition to summary judgment, stating that she "present[ly]" worked at nVent. App.10; R.Doc.153, at 10. Deering submitted two settlement letters to the magistrate judge, in January and November 2022, both describing nVent as her current employer (and using her nVent compensation as the basis for her damages calculation). Even in May 2023, Deering updated her Rule 26 disclosures on economic damages but still omitted her Anaplan compensation. Only after Lockheed Martin moved to exclude her lost-wages evidence, on the cusp of trial, did she finally reveal that she was working at Anaplan by quietly tucking her 2022 Anaplan W-2 form into her set of anticipated trial exhibits.

Given this extended course of willful deception—by an experienced member of the Bar—Lockheed Martin moved to dismiss the case as a sanction. As this Court has long held, "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694-95 (8th Cir. 2001) (affirming dismissal sanction for plaintiff's "perjurious answers during her deposition and in her interrogatory responses"). The District Court granted the motion. It found that Deering had

3

clearly engaged in misconduct, over the span of 19 months, by directly and indirectly (through counsel) lying to Lockheed Martin and the District Court about her employment and thus her damages while under oath. The District Court applied Eighth Circuit precedent and determined that given Deering's legal education and experience, her "conduct was intentional, willful, and in bad faith" and that a lesser sanction would be insufficient, particularly given the gravity and extended duration of the misconduct. App.795; R.Doc.246, at 10.

Deering comes nowhere close to showing that this decision was an abuse of discretion. She instead tries to dodge responsibility for her actions and shift blame onto her lawyers, opposing counsel, and even the District Court (because it denied her unfounded, last-minute request to continue the hearing on the sanctions motion and then declined to entertain a baseless reconsideration motion). Indeed, Deering does not even acknowledge most of her misconduct, such as her false interrogatory responses and sworn verification, her repeated false testimony in her deposition, her false deposition errata sheet, her false summary judgment declaration, and her false settlement conference memoranda submitted to the District Court. Instead, she pretends that the District Court dismissed her case for run-of-the-mill discovery missteps by her former counsel. She offers no rebuttal to the District Court's finding that her own misconduct was deliberate and in bad faith. That unrebutted finding confirms that dismissing the case was well within bounds of the District Court's

4

legitimate discretion.  And Deering's assorted other arguments—to the extent they are properly before this Court—do not alter the analysis.  The Court should affirm the judgment of the District Court in its entirety.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction under 28 U.S.C. § 1331 because Deering asserted federal-law claims.  Sep.App.2; R.Doc.1, at 2.  This Court has jurisdiction over the District Court's July 17, 2023, Order and July 18, 2023, Judgment under 28 U.S.C. § 1291 because that Order and Judgment constitute a final decision disposing of all claims, and Deering filed a timely notice of appeal.  Sep.App.240; R.Doc.258, at 1.

However, Deering never filed a notice of appeal designating the three post-judgment Orders challenged in her appellate brief:  the August 1, 2023, Order denying permission to seek reconsideration, the August 23, 2023, Order granting Lockheed Martin's motion for attorney's fees, or the October 2, 2023, Order awarding attorney's fees.  The Court lacks jurisdiction over her appeal of those Orders.  *See, e.g.*, FED. R. APP. P. 3(c)(1)(B) (requiring notice of appeal to "designate the judgment—or the appealable order—from which the appeal is taken"); *Stephens v. Jessup*, 793 F.3d 941, 943 (8th Cir. 2015) ("[A] notice which manifests an appeal from a specific district court order or decision precludes an appellant from challeng-

5

ing an order or decision that he or she failed to identify in the notice." (citation omitted)); *Hunt v. City of Los Angeles*, 638 F.3d 703, 719 (9th Cir. 2011) (no jurisdiction over attorney's fees award where notice of appeal from underlying judgment predated attorney's fees award and no timely supplemental notice was filed); *EEOC v. Wal-Mart Stores, Inc.*, 187 F.3d 1241, 1250 (10th Cir. 1999) ("[A] supplemental notice of appeal is required for us to have jurisdiction over an attorneys' fees issue that becomes final subsequent to the initial notice of appeal.").

The Court also lacks jurisdiction over Deering's appeal from the entry of partial summary judgment rejecting her race-discrimination claim. Although a partial summary judgment normally merges into the final judgment for purposes of appeal, it does not do so when the final judgment arises from appellant's litigation misconduct. *DuBose v. Minnesota*, 893 F.2d 169, 171 (8th Cir. 1990). In *DuBose*, this Court held that even dismissal for "inadvertent" failure to prosecute "bars review of earlier entered interlocutory rulings." *Id.* For the same reason, a final judgment entered as a sanction for willful misconduct bars review of earlier interlocutory rulings, like the partial summary judgment ruling here. *See Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 288 (7th Cir. 1988) (noting that the appeal-bar created by dismissal for failure to prosecute extends to Rule 37(b) dismissal for discovery abuse); *see also DuBose*, 893 F.2d at 171 (favorably citing *Sere*'s holding).

6

# STATEMENT OF THE ISSUES

1. Whether the District Court abused its discretion when it dismissed this action as a sanction for Deering's extended course of false statements, including in her deposition and court submissions, to hide her more lucrative new employment.

*Most apposite authorities*: *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999).

2. Whether the District Court abused its discretion in ruling that Deering had not justified a continuance of the sanctions hearing, which she did not request until the day before the hearing.

*Most apposite authorities*: *United States v. Keepseagle*, 30 F.4th 802 (8th Cir. 2022); *Grunewald v. Mo. Pac. R.R. Co.*, 331 F.2d 983, 986 (8th Cir. 1964).

3. Whether, if the Court has jurisdiction to address the issue, the District Court abused its discretion in not granting Deering leave to move for reconsideration of the sanctions ruling.

*Most apposite authorities*: *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106 (8th Cir. 2019).

4. Whether, if the Court has jurisdiction to address the issue, the District Court abused its discretion by ordering Deering to pay a supposedly excessive amount of attorney's fees?

7

*Most apposite authorities*: *League of Women Voters of Mo. v. Ashcroft*, 5 F.4th 937 (8th Cir. 2021).

5.    Whether, if the Court has jurisdiction to address the issue and it is not moot because of the case-ending sanctions, the District Court erred in granting summary judgment on Plaintiff's race-discrimination claim.

*Most apposite authorities*: *Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011) (en banc); *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104 (8th Cir. 1998).

## STATEMENT OF THE CASE

**I.    Deering, an experienced in-house attorney, is discharged for unauthorized disclosure of attorney-client privileged and sensitive materials.**

Lockheed Martin hired Deering as in-house counsel in April 2002, and, from 2012 until her termination, she worked exclusively as a labor and employment attorney in Lockheed Martin's Rotary and Mission Systems ("RMS") business area. Sep.App.6; R.Doc.1, at 6; Sep.App.55; R.Doc.131-2, at 2.  By her own description, Deering's responsibilities from 2012 forward were focused solely in the labor-and-employment area. Sep.App.49; R.Doc.129-4, at 3.

One of the matters for which Deering had responsibility was a single-plaintiff age-discrimination lawsuit, *Braden v. Lockheed Martin Corp.*, No. 14-cv-4215 (D.N.J.).  App.307; R.Doc.152, at 56.  In January 2017, the *Braden* jury returned a

verdict awarding nearly $51.6 million, including $50 million in punitive damages. App.307, 309; R.Doc.152, at 56, 58. The verdict garnered substantial media attention and was Lockheed Martin's "largest . . . single plaintiff verdict in an employment case." App.158; R.Doc.158, at 11. This was particularly "embarrass[ing]" for Maryanne Lavan, Lockheed Martin's General Counsel, who had spoken to the Board of Directors just before the verdict and had not flagged that *Braden* posed any risk. App.405-06; R.Doc.152-1, at 20-21. Deering was responsible for evaluating the risk presented by her cases. App.398; R.Doc.152-1, at 13. She never told anyone at Lockheed Martin that *Braden* presented a material risk of a punitive damages award (let alone a $50 million award). App.399-400, 443; R.Doc.152-1, at 14-15, 58.

On March 27, 2018, Deering received her performance rating for 2017. Each year from 2014 to 2016, Deering had received an "Exceeded" rating, the second highest on Lockheed Martin's four-tiered scale. Sep.App.243-48; R.Doc.135, at 2-7; Sep.App.250-53; R.Doc.135-1, at 2-5; Sep.App.255-58; R.Doc.135-2, at 2-5; Sep.App.260-61; R.Doc.135-3, at 2-3. For 2017, she received "Achieved/Substantially Achieved," one level below "Exceeded." Sep.App.268; R.Doc.135-6, at 7. The primary reason for this one-level decrease was *Braden*. App.17; R.Doc.140, at 2; App.445; R.Doc.152-1, at 60. Because of *Braden*, Ken Bastian, Deering's white manager, also received a step down from "Exceeded" in 2016 to "Achieved" in 2017. App.152; R.Doc.152-4, at 5; App.445; R.Doc.152-1, at 60; Sep.App.270-73;

9

R.Doc.135-8, at 2-5; Sep.App.275-82; R.Doc.135-9, at 2-9. Deering admitted that Lavan's criticism relating to *Braden* was "equally doled out" between both Bastian and Deering. App.329; R.Doc.152, at 78.

Nevertheless, Deering filed an EEOC charge on November 14, 2018, alleging that her 2017 rating was discriminatory. Sep.App.43-45; R.Doc.129-3, at 4-6. Without permission, Deering removed hundreds of pages of confidential documents from Lockheed Martin and attached to her EEOC charge in a public forum dozens of pages containing unredacted attorney-client privileged communications, attorney work product, and/or confidential and sensitive materials. App.269; R.Doc.152, at 18; App.422; R.Doc.152-1, at 37; App.678-79; R.Doc.152-2, at 56-57. The documents were obviously privileged and included legal analysis and advice among Lockheed Martin's in-house and outside counsel. App.770; R.Doc.164, at 8.

Upon learning of Deering's unauthorized disclosure of this information, Lockheed Martin investigated and referred the matter to its RMS Disciplinary Review Committee. App.104-05; R.Doc.142, at 1-2. The Committee determined that Deering had disclosed privileged and sensitive materials without taking precautions to limit unnecessary disclosure (such as redactions), and that this conduct was more egregious because Deering was an experienced lawyer who held a position of trust to protect Lockheed Martin's confidences and privileged materials. App.106;

10

R.Doc.142, at 3. For this reason, Lockheed Martin terminated Deering's employment. *Id.*

Deering responded with this lawsuit. She alleged, among other things, that Lockheed Martin discriminatorily gave her a lower performance rating in 2017, that she had been denied promotions to VP positions because of her race, and that Lockheed Martin unlawfully terminated her employment in retaliation for her complaints of discrimination. Sep.App.1-39; R.Doc.1, at 1-39.

## II. The District Court rejects Deering's discrimination claim at summary judgment but allows her retaliation claim to proceed to trial.

After discovery, Lockheed Martin moved for summary judgment. The District Court granted Lockheed Martin's motion in part, as to Deering's race-discrimination claims. App.763, 780; R.Doc.164, at 1, 18. It noted there was no evidence that Lockheed Martin bore racial animus toward Deering or that the alleged adverse employment actions gave rise to an inference of discrimination. App.780-81; R.Doc.164, at 18-19. Bastian, Deering's white supervisor, received the same lower-than-usual performance rating and, by Deering's admission, was "equally" subjected to criticism for their handling of *Braden*. App.781; R.Doc.164, at 19. As for her failure-to-promote allegations, Deering similarly failed to show that others were more favorably treated because of race. App.782; R.Doc.164, at 20. She had no evidence that she was more qualified for the VP positions than the individuals se-

11

lected.  App.783; R.Doc.164, at 21.  On the contrary, she lacked the breadth of experience desired for the job, and there was concern over her handling of *Braden* and an earlier adverse jury verdict.  *Id.*  No evidence suggested that Lockheed Martin's nondiscriminatory explanations were pretextual.  App.784; R.Doc.164, at 22.

As to Deering's retaliation claim, the District Court denied summary judgment.  App.780; R.Doc.164, at 18.  It agreed that Deering had improperly given confidential and attorney-client privileged documents to third parties, but found a factual dispute on whether Lockheed Martin had somehow "lured" Deering into making those improper disclosures.  App.777-79; R.Doc.164, at 15-17.

## III.  Lockheed Martin discovers on the eve of trial that Deering has lied about her post-Lockheed Martin employment and inflated her claimed damages.

With trial scheduled to start June 26, 2023, Lockheed Martin moved in limine to preclude Deering from presenting certain damages evidence.  Lockheed Martin objected to evidence of Deering's alleged economic damages from August 2021 onward because she had never provided required disclosures related to such damages.  Sep.App.111; R.Doc.207, at 2.  Federal Rule of Civil Procedure 26(a)(1)(A)(iii) required Deering to provide not only a computation of each category of damages she claimed, but also to make available the evidence on which her computation relied.

12

Facing the possibility that her lost wages would be limited to before August 2021 (as opposed to extending through 2026), on June 7, 2023—two days after Lockheed Martin had filed its motion in limine and less than three weeks from the start of trial—Deering quietly included in her proposed trial exhibits her 2021 tax returns, her 2022 W-2 statement, and an October 12, 2021 signed acceptance of a job offer with Anaplan, Inc., a company never previously disclosed. Sep.App.120-21; R.Doc.222, at 2-3; Sep.App.148-51; R.Doc.222-7, at 2-5; Sep.App.153-95; R.Doc.222-9, at 2-44; Sep. App. 197; R.Doc.222-10, at 2. The eleventh-hour inclusion of these proposed trial exhibits revealed that Deering had disregarded Lockheed Martin's requests for such documents until she might suffer a consequence for doing so. Sep.App.128; R.Doc.222-1, at 5. But the real shock was what these belatedly disclosed documents revealed. They showed that on October 12, 2021, Deering had accepted an offer to start with Anaplan on November 8, 2021, even though Deering had consistently represented to Lockheed Martin and the District Court that since February 2021 she had worked for nVent[1] without searching for another job. Two weeks after this belated

---

[1] To be precise, Deering never voluntarily disclosed her employment at nVent, either. Sep.App.224; R.Doc.237, at 3. Lockheed Martin's counsel discovered that fact through their own investigation using social media. *Id.* Deering's supplemental interrogatory response and sworn verification did not identify nVent even though she had already started working there. *Id.* Deering never supplemented her answers to interrogatories to disclose either her nVent or Anaplan employment. *Id.* Because Deering had to sign interrogatory answers and any supplements, she must have known that she never disclosed those facts to Lockheed Martin.

Appellate Case: 23-2853     Page: 24     Date Filed: 01/18/2024 Entry ID: 5354401

production, Deering produced her final paystubs from nVent, which showed that her last day with nVent was October 22, 2021, eight days before her deposition, where she testified that she was still employed at nVent. Sep.App.222; R.Doc.237, at 1; Sep.App.227; R.Doc.237-1 at 2.

These new productions revealed that Deering had given repeated, blatantly false testimony during her November 1, 2021, deposition. At the very start of the deposition, Lockheed Martin's counsel asked about Deering's current job and responsibilities:

Q.     Where are you currently employed?

A.     NVent. . . .

Q.     And what is your job title?

A.     I'm Associate General Counsel Director.

Q.     And can you summarize your compensation package for me?

A.     Yes. My base salary is $200,000; I have bonus compensation, but not guaranteed, but when they do have bonuses, it's at 35 percent of your salary …

Q.     And what services are you performing for nVent?

A.     I am segment counsel for their Enclosure segment. It's the largest of the—of the three business segments for the company. I provide legal advice to the business on a variety of areas—contracts, both domestic and international; IP issues as they arise; employment law issues as they arise; I manage a contracts manager and basically serve as a member of the leadership team for the Enclosures business, and I have hard-line reporting to the legal department and dotted-line reporting to my segment president. …

14

App.255-56; R.Doc.152, at 4-5.  This testimony was false.  At the time of her deposition, Deering was no longer working at nVent, receiving compensation, or performing those duties.

Deering further testified falsely about her efforts to find other employment. In response to interrogatories, she had produced a list of her job search efforts, listing a final job search effort in December 2020.  Sep.App.143; R.Doc.222-5, at 12.  At the November 1, 2021, deposition, Deering unequivocally stated that she had not made any efforts since starting at nVent in February 2021 to secure other employment:

> Q. Are there any efforts beyond December of 2020 that you've made to secure other employment that are not in this document?
>
> A. Not that I'm aware of.  It's exhausting and disheartening to keep applying for jobs and not getting anything.
>
> Q. Right.  Is that the reason why you haven't applied for any positions after December 2020?
>
> A. I don't know if I—I'll need to update that if I have.  I'll have to check. I may have submitted a couple applications, but not many.  I didn't start my job with nVent until February 2021, so we'll need to update that.
>
> Q. Have you applied—have you looked for any alternative employment while you've been working for nVent?
>
> A. No.
>
> Q So you may have applied to a few jobs between the end of December and February of 2021, but you haven't done any since. Is that correct?
>
> A. That's correct.

Appellate Case: 23-2853     Page: 26     Date Filed: 01/18/2024 Entry ID: 5354401

App.293-94; R.Doc.152, at 42-43. Again, clear lies: Deering *had* searched for and obtained a new job with Anaplan, as she signed an offer letter a few weeks before her deposition. Sep.App.148-51; R.Doc.222-7, at 2-5. Deering further testified that she had "produced everything related to [her] job search." App.291; R.Doc.152, at 40. But that too was untrue because she had never produced her Anaplan offer letter or any documents related to her search for that job.

Deering had the chance to correct her false testimony when she signed the errata sheet for her deposition transcript. But she did not do so. Instead, she reaffirmed her false testimony and made no changes in her errata sheet. Sep.App.229; R.Doc.237-6, at 2.

Deering thereafter compounded her lies and deception by submitting a declaration on March 24, 2022, in opposition to Lockheed Martin's summary judgment motion, which included a copy of her resume that falsely stated that her "professional experience" from "02/2021-present" was with nVent. App.1, 9-10; R.Doc.153, at 1, 9-10. By then, she had been working at Anaplan for over four months. She also submitted two mediation statements to the District Court (the Magistrate Judge)—on January 13 and November 3, 2022—which also failed to identify her job at Anaplan and maintained the lie that she was still employed at nVent earning less compensation. App.792-93; R.Doc.246, at 7-8. In fact, her November 3, 2022, mediation statement (nearly a year after she started at Anaplan) specified that her current

16

employer was nVent and that her salary and benefits with nVent were the basis for her damages. App.793; R.Doc.246, at 8.

Deering further compounded her deception on May 25, 2023, when she submitted a new damages computation for trial which claimed $359,134 in lost wages as the difference between her estimated Lockheed Martin income ("$620,000") and her "actual nVent income" (reportedly $260,866). Sep.App.115; R.Doc.207-4, at 3. Yet her Anaplan W-2 for 2022—which Deering had when she prepared this computation—revealed an actual 2022 income of at least $452,214, establishing just $167,786 in lost wages, not $359,134. Sep.App.197; R.Doc.222-10, at 2. And that was only one year. Her computation also understated her 2021 compensation. Sep.App.115; R.Doc.207-4, at 3; Sep.App.163; R.Doc.222-9, at 12. The effect of these damages inflations could have been multiplied by Deering's pursuit of treble damages, punitive damages, and interest. Sep.App.115; R.Doc.207-4, at 3. Had Deering succeeded in concealing her Anaplan employment and prevailed at trial, that concealment could have netted her millions of dollars in additional damages.

## IV. The District Court dismissed Deering's case because of her repeated willful misrepresentations to Lockheed Martin and the District Court.

On June 12, 2023, having just discovered that Deering concealed material facts for over 19 months, and had repeatedly lied under oath in signed verifications, deposition testimony and a declaration, Lockheed Martin filed an emergency motion

17

for sanctions. The District Court cancelled the scheduled start of trial and set a motion hearing for June 28, 2023. Sep.App.199; R.Doc.225, at 1; Sep.App.200; R.Doc.226, at 1.

The afternoon before the hearing, on June 27, 2023, Deering suddenly requested a continuance, claiming (without factual elaboration) that the attorneys who had filed her opposition to the sanctions motion now had a conflict of interest that prevented them from representing her. She made no effort to explain how that conflict of interest could have extended to her newest attorney, William A. Gilbert, who had moved to appear pro hac vice as Deering's counsel on June 7, 2023, long after discovery had closed. Sep.App.117-18; R.Doc.218, at 1-2. At the start of the June 28 hearing, which Mr. Gilbert attended in his capacity as Deering's counsel (although he did not speak during the hearing), App.118; R.Doc.248, at 3, the District Court denied the continuance, stating that it was "inappropriate and out of time" and unjustified in any event because the hearing would be focusing on "the facts of Ms. Deering's employment." App.119; R.Doc.248, at 4; *see also* App.131; R.Doc.248, at 16. Deering substituted new counsel on July 11, 2023, after the hearing but before the District Court entered its sanctions order. Sep.App.235; R.Doc.245, at 1.

On July 17, 2023, the District Court granted Lockheed Martin's motion. App.786-97; R.Doc.246, at 1-12. The District Court had "no doubt that Deering engaged in misconduct." App.794; R.Doc.246, at 9. Both "directly and indirectly

18

through her counsel," she had "lied to Lockheed Martin and the court about her employment and thus her damages . . . for nineteen months[,] under oath." *Id.* Indeed, "[s]he was asked clear questions about her employment orally and in writing and she repeatedly lied in response while under oath." App.795; R.Doc.246, at 10. Not only that, "[s]he presented false information to the court in settlement conferences and on summary judgment." *Id.* This conduct was "all the more concerning" because Deering is a lawyer who knew the gravity of such misconduct "in light of her legal education and experience." *Id.* The District Court thus recognized "that her conduct was intentional, willful, and in bad faith." *Id.* In these circumstances, "a lesser sanction would provide no more than a slap on the wrist" and would not suffice "[g]iven the gravity of Deering's misconduct and the fact that it was ongoing throughout most of this litigation." *Id.*

## V. After dismissing the case, the District Court denied Deering's motion for permission to seek reconsideration.

Deering then sought another bite at the apple. Although Deering's new counsel had not supplemented her filings with the District Court before receiving the Court's order, ten days after the order, they submitted a letter asking for permission to move for reconsideration. Sep.App.238-39; R.Doc.250, at 1-2. This letter identified no newly discovered facts or clear mistake of law. Rather, it cited the legal standard that the District Court had already applied and enclosed a declaration from

19

Deering that she could have submitted in opposing the original motion but supposedly did not submit "due to a disagreement with [her] prior counsel." App.107; R.Doc.250-1, at 1; Sep.App.238-39; R.Doc.250, at 1-2. The letter did not explain why newly retained counsel did not submit the declaration during the period between their appearance and the issuance of the District Court's order.

For the first time, Deering claimed that the counsel she had discharged in October 2022—long before the sanctions motion—had advised her "not [to] discuss [her] Anaplan offer during [her] deposition." App.109; R.Doc.250-1, at 3. She gave no explanation why her more recently retained counsel, such as Mr. Gilbert or Kaarin Nelson Schaffer, could not have raised this point earlier, which related exclusively to alleged misconduct of another attorney and predated their roles in the case. App.111-12; R.Doc.250-1, at 5-6. Deering attempted to explain her false statement in her summary judgment declaration as an oversight. App.110-11; R.Doc.250-1, at 4-5. Again, that submission had nothing to do with Ms. Schaffer or Mr. Gilbert and predated their involvement.

The District Court denied Deering's request to seek reconsideration. It explained that reconsideration is not appropriate "to relitigate old issues" when, as here, there are no extraordinary circumstances that warrant doing so. App.798; R.Doc.252, at 1.

## VI. The District Court awarded part of the attorney's fees Lockheed Martin incurred as a result of Deering's sanctionable misconduct.

The District Court agreed that Deering's misconduct justified an award of attorney's fees and costs for researching, briefing, and arguing the motion for sanctions and motion for reconsideration. App.800; R.Doc.271, at 1. It rejected Lockheed Martin's request for fees related to its participation in the earlier settlement conferences. App.801; R.Doc.271, at 2. The District Court reviewed Lockheed Martin's documentation and found its counsel's rates to be reasonable. App.804-06; R.Doc.284, at 3-5. It disagreed with Deering's arguments to reduce the 197 hours billed by Lockheed Martin's counsel to 35 hours, because these arguments "ignore[d] the emergency nature of the motion—on the eve of trial—and, frankly, its gravity and the contentious nature of the litigation as a whole." App.807; R.Doc.284, at 6. Even so, the District Court reduced the amount Lockheed Martin requested by 20% given the number of attorneys involved and overlap in certain tasks performed. App.808; R.Doc.284, at 7. The District Court carefully explained why Deering's other assorted challenges to the amount of fees all failed. App.808-09; R.Doc.284, at 7-8.

## SUMMARY OF ARGUMENT

The District Court properly dismissed Deering's action because she personally engaged in repeated, deliberate deception that made her claims look stronger

Appellate Case: 23-2853     Page: 32     Date Filed: 01/18/2024 Entry ID: 5354401

than they were.  She did so for 19 months, in numerous sworn statements and court submissions, knowing (as an attorney) the seriousness of this deliberate dishonesty. The District Court considered lesser sanctions but determined that they would be insufficient for misconduct this grave.  A long line of Eighth Circuit cases supports this sound exercise of discretion.

Deering's efforts to escape responsibility for her own actions should be rejected.  She had many opportunities to avoid perjury and correct any misstatements, but instead she continued the deception.  She cannot blame her lawyers because she is responsible for hiring them and because she herself committed many of the worst acts at issue.  Similarly, she cannot blame the District Court for denying her request for a continuance.  She made the request far too late, was responsible for making an issue out of her (former) attorneys' knowledge, and in any event was represented by unconflicted counsel at the sanctions hearing.

The foregoing conclusions suffice to resolve this appeal.  Deering did not file a notice of appeal of the post-judgment orders she now challenges, denying this Court appellate jurisdiction.  The Court also lacks jurisdiction to consider the partial summary judgment order because the whole case was later dismissed due to Deering's sanctionable misconduct.

In any event, Deering's remaining appellate arguments all fail on the merits as well.  The District Court properly exercised its discretion in allowing Deering to

Appellate Case: 23-2853     Page: 33     Date Filed: 01/18/2024 Entry ID: 5354401

seek reconsideration based solely on arguments that could have been raised before. And it properly exercised its discretion in awarding attorney's fees. The District Court also was correct to grant summary judgment on Deering's failure-to-promote claims. Deering was plainly less qualified than the individuals chosen to fill the relevant VP roles, because she had spent years focused on labor-and-employment matters while those roles called for different specializations. The District Court's judgment should be affirmed in full.

## STANDARD OF REVIEW

This Court reviews the imposition of sanctions for abuse of discretion. *Martin*, 251 F.3d at 694. This "deferential" standard "applies to the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for the court's decision." *Chrysler*, 186 F.3d at 1019. The Court also applies the abuse-of-discretion standard to the denial of a motion for a continuance, *e.g.*, *Keepseagle*, 30 F.4th at 815, to the denial of a post-judgment motion for reconsideration, *e.g.*, *SPV-LS*, 912 F.3d at 1111, and to the award of attorney's fees, *e.g.*, *League of Women Voters*, 5 F.4th at 939. "An abuse of discretion will only be found if the district court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions." *Mathenia v. Delo*, 99 F.3d 1476, 1480 (8th Cir. 1996).

The Court reviews a grant of summary judgment de novo. *E.g.*, *Torgerson*, 643 F.3d at 1042.

Appellate Case: 23-2853     Page: 34     Date Filed: 01/18/2024 Entry ID: 5354401

## ARGUMENT

**I.    The District Court did not abuse its discretion in dismissing Deering's lawsuit for her abuse of the judicial process.**

It is well settled that "[w]hen a litigant's conduct abuses the judicial process, dismissal of a lawsuit is a remedy within the inherent power of the court." *Martin*, 251 F.3d at 694; *accord Pope v. Fed. Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992). Courts have inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process," and "dismissal of a lawsuit," though "a particularly severe sanction," is nonetheless "within the court's discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

When "dismissal 'lies within the spectrum of appropriate sanctions, [this Court] will not substitute [its] own judgment for that of the district court even though [it] may have chosen a different sanction had [it] been standing in the shoes of the trial court." *Martin*, 251 F.3d at 694 (quoting *Chrysler*, 186 F.3d at 1020). "The test generally applied in determining whether the District Judge abused his discretion in dismissing claims as a discovery sanction is whether the discovery abuse was in bad faith or deliberately intentional or willful." *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992).

24

**A.    The District Court did not abuse its discretion in finding that Deering had engaged in an extended pattern of deliberate dishonesty warranting dismissal.**

The District Court "recognize[d] that dismissal is 'an extreme sanction' to be 'used sparingly,'" only when "the court is able to find, by clear and convincing evidence, both (1) that the misconduct occurred, and (2) that a lesser sanction would not sufficiently punish and deter the abusive conduct." App.794-95; R.Doc.246, at 9-10 (quoting *Thoms v. McDonald's Corp.*, No. 03-cv-2465, 2003 WL 22901686, at *1 (D. Minn. Nov. 26, 2003)). In finding dismissal warranted, the District Court applied the correct legal standard and made findings showing that each factor supported dismissal.

*First*, the District Court found that Deering had undoubtedly engaged in misconduct and recounted that misconduct in detail. App.794; R.Doc.246, at 9. It began with Lockheed Martin's discovery requests for Deering's post-Lockheed Martin employment and observed that Deering had provided some responsive information and updated her responses on several occasions, but without disclosing her Anaplan employment. App.789-91; R.Doc.246, at 4-6. Then the District Court walked through her false statements in her deposition. Those falsehoods included adamant denial that she had sought new employment after starting with nVent, App.790; R.Doc.246, at 5, and statements that she was still working at nVent and responsible for her nVent job duties at the time of the deposition, App.791; R.Doc.246, at 6. Deering did not

25

attempt to correct these misstatements when she signed the deposition errata sheet. *Id.* Later, she purported to disclose her 2021 and 2022 actual earnings, but these disclosures were grossly understated given her Anaplan compensation. App.791-92; R.Doc.246, at 6-7. Deering also misrepresented, in her summary judgment declaration, that she continued to work for nVent as of March 2022. App.792-93; R.Doc.246, at 7-8. And her mediation statement in November 2022 falsely described nVent as her current employer and calculated damages as though that were true. App.793; R.Doc.246, at 8.

Based on this long series of deceptions, all concealing the same harmful facts, the District Court found that Deering "lied to Lockheed Martin and the court about her employment and thus her damages"—not just "indirectly through her counsel," but "directly" as well. App.794; R.Doc.246, at 9. The District Court highlighted Deering's personal deception: "She was asked clear questions about her employment orally and in writing and she repeatedly lied in response while under oath." App.795; R.Doc.246, at 10. Telling lies under oath constitutes "a direct affront to the court." App.794; R.Doc.246, at 9 (quoting *Chrysler*, 186 F.3d at 1021).

*Second*, the District Court found that this misconduct was "intentional, willful, and in bad faith." App.795; R.Doc.246, at 10. That was readily apparent when one viewed Deering's actions "in light of her legal education and experience." *Id.*

26

*Third*, the District Court found that dismissal was appropriate because "a lighter sanction simply [would] not suffice." *Id.* A lighter sanction would be insufficient "[g]iven the gravity of Deering's misconduct and the fact that it was ongoing throughout most of this litigation." *Id.* As a result, "[a] lesser sanction would provide no more than a slap on the wrist" and would not fulfill the District Court's responsibility for both "punishing the misconduct and deterring such behavior in the future." *Id.*

None of these findings is clear error or an abuse of discretion. On the contrary, they track how other courts, including this Court, have treated similar misconduct. *See, e.g.*, *Martin*, 251 F.3d at 695 (affirming dismissal based on plaintiff's "perjurious answers during her deposition and in her interrogatory responses"); *Chrysler*, 186 F.3d at 1021 (holding that efforts "to deny and conceal evidence, and to provide false and misleading testimony, seriously threatened the integrity of the trial as well as the judicial process in general"); *Knapp v. Convergys Corp.*, 209 F.R.D. 439, 442 (E.D. Mo. 2002) (granting dismissal for employment-discrimination plaintiff's "perjurious answers in her interrogatories and during her deposition" about her subsequent employment). Deering's arguments mischaracterize the law, the District Court's decision, and the record.

27

## B. Deering's counterarguments are meritless.

### 1. The District Court was under no obligation to issue a discovery order before imposing the dismissal sanction.

Deering first argues that the District Court "applied Rule 37(b)(2) without first issuing an order compelling discovery." Deering Br. 29. This argument erroneously assumes that the District Court relied only on Rule 37(b)(2). In fact, the District Court merely cited Rule 37(b)(2) as one possible basis for dismissal, but also cited Rule 37(c)(1)(C) and its inherent authority. App.793-94; R.Doc.246, at 8-9. The District Court's decision properly rested on multiple bases and cited several inherent-authority cases. App.793-95; R.Doc.246, at 8-10 (citing, among other cases, *Thoms*, 2003 WL 22901686, at *1; *Martin*, 251 F.3d at 694; *Knapp*, 209 F.R.D. at 442; *Pope*, 974 F.2d at 984); *see Chrysler*, 186 F.3d at 1019 (affirming order that "imposed the sanction under Rule 37 of the Federal Rules of Civil Procedure and the inherent authority of the court"). Deering's first argument rests on a demonstrably false premise.

In any event, Deering cites no authority holding that a court must issue an order compelling discovery before dismissing an action based on a litigant's lies under oath. Deering's primary authority on this issue, *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 993 (8th Cir. 1975), actually stands for the opposite of what she claims, recognizing that immediate sanctions—including dismissal—may be imposed "for willful failure to comply with discovery rules." *Fox* upheld dismissal

Appellate Case: 23-2853     Page: 39     Date Filed: 01/18/2024 Entry ID: 5354401

where plaintiffs had answered interrogatories untruthfully, even without a "Rule 37(a) order compelling plaintiffs to completely answer the interrogatories." *Id.* at 991-93. After all, "no one needs to be warned not to lie to the judiciary." *Ayoubi v. Dart*, 640 F. App'x 524, 529 (7th Cir. 2016). When that is true even of pro se non-lawyers, *see id.*, it applies even more obviously to litigants like Deering with decades of legal experience. *Cf. Chrysler*, 186 F.3d at 1022 (noting that attorney-litigants were not unfairly surprised when their willful, bad-faith discovery abuse triggered dismissal).

### 2. The District Court considered and properly rejected less severe sanctions.

Deering next argues that the District Court failed to consider sanctions less severe than dismissal. Deering Br. 30-31. This argument is baseless. The District Court explicitly found that lesser sanctions were inadequate given the "gravity of Deering's misconduct and the fact that it was ongoing throughout most of th[e] litigation" and up to "the eve of trial," which had to be postponed as a result. App.788, 792, 795; R.Doc.246, at 3, 7, 10. In these extreme circumstances, a lesser sanction "would provide no more than a slap on the wrist" and would neither "punish[] the misconduct" or "deter[] such behavior in the future." App.795; R.Doc.246, at 10.

By claiming that the District Court failed to consider lesser sanctions while ignoring its discussion of lesser sanctions, Deering reveals her inability to articulate any real challenge to the order. While "fairness requires a court to consider whether

29

a lesser sanction is available," the court is not "constrained to impose the least oner-ous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000) (affirming dismissal where "the district court consid-ered and rejected lesser sanctions"); *see Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 79 & n.3 (5th Cir. 2011) (finding no abuse of discretion where the court "con-sider[ed] lesser sanctions and explicitly found that dismissal of the complaint in its entirety was the only effective sanction").

Deering's authorities do not support her. In *Gleghorn v. Melton*, 195 F. App'x 535, 537 (8th Cir. 2006), the Court was unable to "discern from the record" whether the district court considered lesser sanctions or found that the plaintiff acted willfully and in bad faith. Here, the District Court expressly rejected lesser sanctions and found willful, bad-faith misconduct. App.795; R.Doc.246, at 10. And the miscon-duct in *Gleghorn* consisted of much less egregious failures to respond to interroga-tories and production requests. 195 F. App'x at 536. Similarly, in *Bergstrom v. Frascone*, 744 F.3d 571, 575 (8th Cir. 2014), "[n]othing in the record indicate[d] the district court even considered the viability of lesser sanctions." And again, the mis-conduct—"delays and failure to comply with the ordered deadlines," *id.*—was not remotely comparable to Deering's misconduct. *Hunt v. City of Minneapolis*, 203 F.3d 524, 527-28 (8th Cir. 2000), was also a failure-to-prosecute case, and this Court

30

upheld the dismissal. Deering seeks to recast her misconduct as mere failures to timely respond to discovery. But she ignores her many false statements under oath and misrepresentations to Lockheed Martin and the District Court. Her misconduct amply justified dismissal, and she cites not a single case concluding that comparable misconduct is insufficient.

Deering insists that monetary sanctions or "inform[ing] the jury of Deering's late disclosure" would have been lesser sanctions. Deering Br. 31. But as the District Court recognized, lesser sanctions would not have sufficed to punish Deering's misconduct or deter comparable misconduct in the future. App.795; R.Doc.246, at 10. And again, Deering's misconduct was not just "late disclosure." Her misconduct was lying under oath, repeatedly, while making her claims look better than they were. Merely compensating Lockheed Martin with attorney's fees would indeed have been a slap on the wrist and no meaningful deterrent. *Cf. Brown*, 664 F.3d at 79 (observing that the "deterrence rationale" for dismissal is that "not everyone [who provides perjured testimony] will be caught").

### 3. Deering cannot shift the blame for her misconduct onto her former lawyers.

Deering has never explained (much less taken responsibility for) her personal actions to hide her Anaplan employment from Lockheed Martin and the District Court. Even now, she portrays the problem as a simple failure to "produce[]" the Anaplan documents. Deering Br. 31-32. And this "lack of supplemental discovery,"

31

Deering insists, "was the fault of [her] counsel." Deering Br. 33. To the extent she addresses her deposition lies, she tries to blame an attorney for supposedly telling her not to discuss her Anaplan employment before her start date there.

This argument ignores the "well-established principle that a party is responsible for the actions and conduct of [her] counsel." *Boogaerts*, 961 F.2d at 768 (citation omitted). Deering "voluntarily chose [her] attorney[s] as [her] representative[s] in the action, and [s]he cannot now avoid the consequences of the acts or omissions of [these] freely selected agent[s]" because such a "notion would be wholly inconsistent with our system of representative litigation." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962). As *Boogaerts*, *Link*, and other cases observe, this principle extends even to the dismissal of a litigant's claim based on the actions of the litigant's chosen counsel. *See also, e.g.*, *Siems v. City of Minneapolis*, 560 F.3d 824, 827 (8th Cir. 2009); *Nolting v. Yellow Freight Sys., Inc.*, 799 F.2d 1192, 1200 (8th Cir. 1986).

In any event, this blame-my-counsel strategy does not fit the facts here. Deering was the one who falsely claimed at her deposition and through her declaration to still be working at nVent. She was the one who falsely denied having made any job-search efforts after starting at nVent. She could easily have told the truth by saying, "I accepted a job offer at a new company, but I have not actually started work there." It would not have been hard for an experienced lawyer to figure that out. Instead,

32

Deering personally engaged in egregious and willful acts of deception, as the District Court recognized. Holding her responsible for that personal conduct was fully appropriate and nowhere close to an abuse of discretion.

## II. The District Court did not abuse its discretion in refusing to continue the sanctions hearing.

Beyond blaming her counsel, Deering faults the District Court for denying a continuance. Deering Br. 34-39. Under this Court's precedent, "[c]ontinuances generally are not favored and should be granted only when the party requesting one has shown a compelling reason." *Keepseagle*, 30 F.4th at 815 (citation omitted). "District courts are afforded broad discretion when ruling on requests for continuances." *United States v. Keiser*, 578 F.3d 897, 901 (8th Cir. 2009) (citation omitted).

Deering portrays the District Court as being insensitive to an obvious conflict of interest between her and her counsel. She ignores three facts that refute this claim.

*First*, Deering was represented at the sanctions hearing by one attorney, Mr. Gilbert, who was indisputably free of any conflict. He had only entered the case on June 7, 2023, long after the relevant misconduct. Sep.App.117-18; R.Doc.218, at 1-2. And he appeared at the June 28 sanctions hearing on Deering's behalf, even though one of the supposedly conflicted counsel, Ms. Schaffer, handled the argument. App.118; R.Doc.248, at 3. Deering had unconflicted counsel present to speak for her at the hearing. She simply opted not to have him do so.

33

*Second*, Deering did not raise this concern in a timely fashion. Whatever conflict could conceivably have existed was obvious to her by June 12, when Lockheed Martin filed its motion and the District Court scheduled a hearing for June 28, over two weeks later. Sep.App.199; R.Doc.225, at 1. On June 21, Deering filed her opposition with three supporting declarations from her attorneys but no declaration from Deering herself. Sep.App.201-09; R.Doc.230, at 1-9; Sep.App.210-16; R.Doc.231, at 1-7; Sep.App.217-221; R.Doc.232, at 1-5.[2] Yet despite this ample advance warning of the supposed conflict of interest, Deering waited until June 27—hours before the scheduled hearing—to raise this issue. Sep.App.230-34; R.Doc.238, at 1-5. This inexcusable delay justifies, on its own, the District Court's decision to deny the continuance as "inappropriate and out of time." App.119; R.Doc.248, at 4.

*Third*, Deering's motion did not meaningfully explain the nature of the conflict of interest supposedly held by her counsel. Other than stating the general rule that lawyers should not act as advocates *at a trial* in which they are likely to be necessary witnesses, her motion was wholly conclusory:

> Defendant has made Plaintiff's counsel necessary witnesses to establish facts required to refute Defendant's

---

[2] These declarations explain the District Court's remark at the hearing that "unfortunately, the lawyers have made . . . the lawyer's knowledge an issue." App.133; R.Doc.248, at 18. Deering's critique of the District Court's questions about the lawyers' knowledge ignores that she and her legal team injected the attorneys' knowledge into the dispute.

Appellate Case: 23-2853    Page: 45    Date Filed: 01/18/2024 Entry ID: 5354401

> false testimony allegations. Such testimony will be neces-
> sary to corroborate Plaintiff's defense to these claims.
> Plaintiff needs—and requests—time to seek counsel that
> does not have a conflict to represent her in this important
> motion. Plaintiff has good cause for the Court to provide
> her with 60 days to seek new counsel at this time.

Sep.App.231-32; R.Doc.238, at 2-3. This contention is untrue. Deering and her counsel were the ones who injected declarations from her counsel rather than from her, and Lockheed Martin naturally replied to the evidence Deering presented. Besides, the attorney who represented Deering at her deposition and who, according to Deering's later claims, told her not to discuss Anaplan, was no longer representing Deering at the time of the hearing. That attorney's allegedly improper advice presented no ethical conundrum for any of the attorneys who appeared for Deering at the hearing. The District Court sensibly saw through this argument as nothing more than an improper delay tactic.

This case bears no resemblance to *Koors v. Great Southwest Fire Insurance Co.*, 530 N.E.2d 780 (Ind. Ct. App. 1988). There, the conflict of interest was sufficiently clear that the trial court approved the withdrawal of the litigant's counsel three business days before the scheduled hearing and yet denied a continuance. *Id.* at 783. Denying the continuance thus deprived the litigant "of representation at a crucial stage of the proceedings," when there was no evidence the litigant "could foresee the potential conflict." *Id.* Deering, in contrast, had four lawyers at the hearing—one of whom was indisputably unconflicted. Nor is this a case like *United*

35

*States v. Vesey*, 330 F.3d 1070, 1072 (8th Cir. 2003), which involved a detailed showing of counsel's inability to prepare for the hearing in time. Again, Deering and her legal team decided to submit attorney declarations in opposing Lockheed Martin's motion. They should have foreseen the potential conflict of interest they would later claim on the day before the hearing. *Koors* recognizes that counsel's unexpected withdrawal does not necessarily warrant a continuance when the party's own choices are responsible. 530 N.E.2d at 783.

Indeed, it is "well settled that in a civil case an attorney's withdrawal does not give his client an absolute right to a continuance." *Grunewald v. Mo. Pac. R.R. Co.*, 331 F.2d 983, 986 (8th Cir. 1964) (Blackmun, J.). Even when (unlike here) the litigant's attorney has withdrawn, there is no abuse of discretion in denying a continuance unless the litigant establishes that she lacked "prior notice" and that the withdrawal "was without her consent or fault." *Id.* at 987 (upholding dismissal for failure to prosecute after denial of continuance). Deering cannot make that showing.

Further confirming that the continuance was not really about the purported conflict is Deering's second rationale for the continuance: a need to respond to new arguments supposedly raised in Lockheed Martin's reply brief. Deering Br. 37. She objects that Lockheed Martin's reply raised "new allegations" of perjury during Deering's deposition, but ignores that she did not produce the evidence of that perjury—her final paystub from nVent—until June 22, 2023, after Lockheed Martin

36

had submitted its motion. Sep.App.222; R.Doc.237, at 1. This document, of course, had been in Deering's possession since her nVent employment ended in 2021, and was responsive to Lockheed Martin's much earlier discovery requests. It takes chutzpah to fault Lockheed Martin for not citing a document that Deering had long concealed and then fault the District Court for not postponing a hearing on this basis.

## III. The District Court did not abuse its discretion in denying Deering's unsupported request for leave to move for reconsideration.

As noted, *supra* pp. 5-6, Deering's notice of appeal did not designate the order denying leave to seek reconsideration, so this Court lacks jurisdiction to review the order. But if the Court had jurisdiction, the order would warrant affirmance because it was not "a clear abuse of discretion." *SPV-LS*, 912 F.3d at 1111 (citation omitted).

Deering's request for reconsideration was entirely improper. Deering cites *Preston v. City of Pleasant Hill*, 642 F.3d 646, 652 (8th Cir. 2011), and it proves the point. A motion to reconsider is improper to "repeat[] arguments the district court had already rejected" or "belatedly bring[] [evidence] to the district court's attention" that was "available to [the movant]" in opposing the earlier motion. *Id.* at 652. "A motion for reconsideration is not a vehicle to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending" or "to introduce evidence that the movant could have produced before the district court decided the prior motion." *SPV-LS*, 912 F.3d at 1111 (citation omitted). Indeed, Deering agrees that "[m]otions for reconsideration serve a limited function:

37

to correct manifest errors of law or fact or to present newly discovered evidence." Deering Br. 39 (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)).

Deering comes nowhere close to satisfying this standard. She identifies no clear error of law or fact nor any newly discovered evidence. She asserts that she needed nonconflicted counsel to defend her against the sanctions motion. As Lockheed Martin explained, *supra* pp. 33-35, that argument fails on its own terms. Moreover, Deering's personal declaration is not newly discovered evidence. She *could* have submitted such a declaration to oppose the original motion, but she (or the lawyers she hired) selected a different strategy. And even after that, she could have submitted her declaration after her current counsel substituted in, six days before the District Court's ruling. Sep.App.235-37; R.Doc.245, at 1-3. Her failure to so is, at best, a change in strategy only after she lost Lockheed Martin's motion. It was not an abuse of discretion for the District Court to deny this effort "to relitigate old issues." App.798; R.Doc.252, at 1.

## IV.    The District Court did not abuse its discretion in granting part of the attorney's fees amount that Lockheed Martin requested.

As with reconsideration, this Court lacks jurisdiction to entertain Deering's attorney's fees appeal because Deering never designated the relevant order in a timely notice of appeal. *See supra* pp. 5-6. And here too, Deering's appeal fails on its merits. The award of attorney's fees was not an abuse of discretion.

38

Deering first argues that the District Court lacked discretion to award attorney's fees. Deering Br. 40-41. Her arguments are baseless.

*First*, Deering argues in two sentences that Lockheed Martin violated Rule 54(d) by asking for a liability determination first and pledging to provide a quantification if the District Court held Deering liable. This argument ignores the clear language of Rule 54(d): "[t]he court may decide issues of liability for fees before receiving submissions on the value of services." FED. R. CIV. P. 54(d)(2)(C). The District Court quoted this language, App.801; R.Doc.271, at 2, and Deering's failure to address it is telling.

*Second*, Deering insists that she did not "act[] with *intent*." Deering Br. 41. The District Court explicitly found otherwise. App.795; R.Doc.246, at 10 ("[H]er conduct was intentional[.]"); *see also* App.800; R.Doc.271, at 1 (citing the sanctions order). Deering cannot overcome that finding. *See Actors' Equity Ass'n v. Am. Dinner Theatre Inst.*, 802 F.2d 1038, 1042 (8th Cir. 1986) ("A finding of bad faith or lack thereof is a factual determination for the trial court and may be reversed only if clearly erroneous.").

*Third*, Deering contends it was an abuse of discretion to award fees on top of dismissal. Deering Br. 41. The only case she cites on this issue does not address it (or any attorney's fees issue). *See Hunt*, 203 F.3d at 528-29 (affirming sanction of dismissal). It is well within trial courts' legitimate discretion to dismiss a case to

39

punish and deter misconduct while also compensating an adversary for out-of-pocket expenses incurred because of the misconduct. *See Home Design Servs., Inc. v. Schwab Dev. Corp.*, No. 03-cv-596, 2007 WL 2902963, at *6 (M.D. Fla. Oct. 2, 2007) (awarding attorney's fees "to sanction Plaintiff pursuant to the Court's inherent authority" after plaintiff had already been sanctioned with dismissal). Rule 37 expressly notes that a party may be ordered to pay attorney's fees resulting from its misconduct "in addition to" an order of dismissal. FED. R. CIV. P. 37(b)(2)(C), (c)(1)(A)-(C), (d)(3).

Changing tack, Deering challenges the amount of the award because the District Court did not adopt Deering's view of how many attorney hours were reasonable. Deering Br. 42-43. The District Court addressed Deering's objections at length, explaining that it "carefully reviewed the billing statements and generally f[ound] that the tasks performed were appropriate and properly billed" in light of its familiarity with the litigation and issues. App.808; R.Doc.284, at 7; *see* App.807-09; R.Doc.284, at 6-8. Deering's arguments "ignore[d] the emergency nature of the motion—on the eve of trial—and, frankly, its gravity and the contentious nature of the litigation as a whole." App.807; R.Doc.284, at 6.

The District Court would have been justified in granting Lockheed Martin's full requested amount, but it did not go so far. It "reduce[d] the overall requested amount by twenty percent." App.808; R.Doc.284, at 7. Now, Deering says that this

40

percentage-based discount, rather than an entry-by-entry determination, was an abuse of discretion. Deering Br. 43. Not so. A district court does not "abuse[] its discretion by not specifically addressing every issue of contention" regarding attorney's fees. *League of Women Voters*, 5 F.4th at 940. A district court "should not[] become a green-eyeshade accountant" because "the essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Id.* (citation and brackets omitted); *see also Brewington v. Keener*, 902 F.3d 796, 805 (8th Cir. 2018) ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award[.]" (citation omitted)). The District Court had no obligation to accept Deering's allegations of duplicated effort. *See, e.g.*, *A.J. ex rel. L.B. v. Kierst*, 56 F.3d 849, 863 (8th Cir. 1995).

## V. The District Court's prior grant of partial summary judgment provides no basis for reversal.

The Court lacks jurisdiction to consider the partial summary judgment ruling because it did not merge into the final judgment that the District Court entered as a sanction for Deering's willful dishonesty. *See supra* p. 6. And even if the sanctions order did not absolutely bar review of the partial summary judgment, it still renders any appeal from that interlocutory decision moot. The District Court dismissed Deering's entire "case" as a sanction, not just her retaliation claim. App.795, 797; R.Doc.246, at 10, 12. So even if she could show the grant of partial summary judgment was erroneous, the error would be harmless. In addition, Deering's attempt to

41

avoid summary judgment on this claim was bare-bones, spanning all of three para-graphs.  *See* Sep.App.101-02; R.Doc.155 at 46-47.  She has not preserved the litany of arguments she presents on appeal.  *See id.*

In all events, Deering's arguments are meritless.  They start from the premise that summary judgment is "seldom" appropriate in employment-discrimination cases.  Deering Br. 3, 44.  This Court, sitting en banc, has directly rejected that view and any statements in prior panel decisions that might suggest it.  *See Torgerson*, 643 F.3d at 1043.  There is no "different standard of review for summary judgment in employment discrimination cases."  *Id.*  In all contexts, summary judgment is not "a disfavored procedural shortcut, but . . . an integral part of the Federal Rules as a whole.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted); *see Torgerson*, 643 F.3d at 1043.

Deering's discrimination claims are subject to the *McDonnell Douglas* bur-den-shifting framework.  *See, e.g.*, *Young v. Builders Steel Co.*, 754 F.3d 573, 577 (8th Cir. 2014); *Black v. Indep. Sch. Dist. No. 316*, 476 F. Supp. 2d 1115, 1121 (D. Minn. 2007).  Under this framework, Deering bears the initial burden of making a *prima facie* case.  Because the only claim Deering appeals is her failure-to-promote claim, her *prima facie* case requires that: (1) she was a member of a protected group, (2) she was qualified and applied for a promotion to an available position, (3) she was rejected, and (4) a similarly qualified employee, outside of her protected group,

Appellate Case: 23-2853     Page: 53     Date Filed: 01/18/2024 Entry ID: 5354401

was promoted instead. *Rose-Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).

If Deering satisfies her *prima facie* burden, the burden shifts to Lockheed Martin to articulate a legitimate, nonretaliatory reason for the adverse action. *Black*, 476 F. Supp. 2d at 1121. That burden is one of *production* (not persuasion), which is "exceedingly light." *Ottman v. City of Independence*, 341 F.3d 751, 758 (8th Cir. 2003) (employer "must merely proffer [legitimate] reasons, not prove them" (citation omitted)). Once Lockheed Martin meets this burden, Deering "bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus." *Rose-Maston*, 133 F.3d at 1107. The burden of establishing pretext is "more onerous" and "requires more substantial evidence 'because unlike evidence establishing the *prima facie* case, evidence of pretext and discrimination is viewed in light of the employer's justification.'" *Antonich v. U.S. Bank Nat'l Ass'n*, No. 14-cv-710, 2015 WL 4771551, at *7 (D. Minn. Aug. 13, 2015) (citation omitted).

Here, Deering cannot establish a *prima facie* case nor show that Lockheed Martin's legitimate reasons for termination were pretext for discrimination.

### A. Deering did not make a *prima facie* case because she failed to show that she was qualified for senior, non-labor-and-employment roles.

A *prima facie* case for failure to promote requires evidence that the plaintiff "was qualified" for an available position. *Rose-Maston*, 133 F.3d at 1109. Deering

43

thus had to provide "evidence . . . establishing the qualifications for [the desired] position [and] . . . how [s]he met those qualifications." *Qu v. Bd. of Regents of Univ. of Minn.*, No. 08-cv-1843, 2009 WL 2900334, at *6 (D. Minn. Sept. 2, 2009) (citation omitted) (summary judgment where plaintiff proffered no such evidence). Deering did not do so.

There were only three legal department VP positions filled between July 7, 2016, and December 28, 2018 (the relevant period), and none was a labor-and-employment role. App.19; R.Doc.141, at 2. In fact, there is only a single labor-and-employment VP role in Lockheed Martin's legal department, which was occupied during the entire period by Susan Dunnings, an African American. *Id*. The three VP selections during the relevant period were VP & Associate General Counsel, Lockheed Martin International, VP & Associate General Counsel, Litigation & Compliance for Enterprise Operations, and VP General Counsel, Space. App.21; R.Doc.141, at 4.

These are obviously very senior positions. And Lockheed Martin maintains, and relies on, succession plans when filling them. App.412, 417; R.Doc.152-1, at 27, 32. The undisputed record shows that Deering was not on a succession plan for any of the three filled positions and that Lavan (the decisionmaker) did not believe Deering had the required experience or qualifications given her narrow focus, since 2012, on labor-and-employment issues. App.19-21; R.Doc.141, at 2-4. Deering

44

would have been considered a potential candidate for the VP of Labor & Employment role held by Dunnings, but that position was not open. App.465-66; R.Doc.152-1, at 80-81. Deering herself admitted (in her EEOC charge) that her role from 2012 through her termination "was not conducive to assumption of additional responsibilities outside the labor and employment area." Sep.App.49; R.Doc.129-4, at 3. By Deering's own admission, then, she did not have "additional responsibilities" outside labor and employment from 2012 onward and had a "niche area of practice." *Id.* Deering could have applied for lateral positions to gain the requisite experience (as others did), but she did not. App.207-08; R.Doc.152-4, at 60-61; App.289; R.Doc.152, at 38. In describing her responsibilities, she made clear they all revolved around human resources and employment-related issues. Sep.App.49; R.Doc.129-4, at 3. Accordingly, she was not a qualified candidate any of these non-labor-and-employment roles, which required broader experience. App.19, 21; R.Doc.141, at 2, 4. No labor-and-employment attorney was considered or selected for any of these VP roles. App.21; R.Doc.141, at 4.

Rather, the undisputed record showed that the VP & Associate General Counsel, Lockheed Martin International, role, filled by Rich Paul, was a role for which Lavan was looking for candidates who had transactional (preferably international) experience. App.19-20; R.Doc.141, at 2-3. The VP & Associate General Counsel, Litigation & Compliance for Enterprise Operations, filled by Maryann Surrick, was

a specialist role for which Lavan was seeking a candidate who had the experience and qualifications to oversee all major litigation and compliance matters. Specifically, Lavan was looking for experience with: False Claims Act ("FCA"), Foreign Corrupt Practices Act ("FCPA"), securities; intellectual property ("IP"), trade secrets and international trade compliance matters. App.20; R.Doc.141, at 3. As Deering admitted, she never directly managed a FCA case or securities matter and had not worked on FCPA or IP matters since 2012. App.285; R.Doc.152, at 34. Third, the VP General Counsel, Space role, which was filled by external hire Monica Palko, was one for which Lavan was looking for broad experience and skills in contracting, IP management, risk management, regulatory affairs, international trade compliance, subsidiary governance, and Department of Defense and commercial agency acquisition processes, App.20; R.Doc.141, at 3. Lavan did not consider Deering (or any internal candidate) because the business area preferred external candidates. App.20; R.Doc.141, at 3; App.421; R.Doc.152-1, at 36.

This is not a case like the one Deering cites, *Lyoch v. Anheuser-Busch Cos.*, 139 F.3d 612, 615 (8th Cir. 1998), where the promotion process was "vague and secretive" and relied on subjective criteria. Deering indisputably had not worked in the relevant areas of law for years, when she transitioned to a role exclusively focused on labor-and-employment matters. Nor was she on the succession plans for the roles.

46

In short, Deering "offer[ed] no evidence of the qualifications necessary for [these] position[s]." *Rose-Maston*, 133 F.3d at 1110. On appeal, she merely asserts that she was qualified for the first two positions (International and Litigation & Compliance) because she had some supposedly relevant experience before her transition to her exclusively labor-and-employment role in 2012 or before she started at Lockheed Martin in 2002. Deering Br. 46-47. Such bare, "conclusory assertions that she was qualified for the position[s]" are "insufficient to establish a prima facie case for discriminatory failure to promote." *Rose-Maston*, 133 F.3d at 1110. She no longer asserts that she was qualified for the VP General Counsel, Space role. For this reason, her promotion claim cannot succeed. *See, e.g.*, *Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011).

### B. Lockheed Martin showed that it selected other candidates because it believed they were more qualified than Deering.

Even if Deering had evidence that she met the minimum qualifications for one of these roles, Lockheed Martin clearly articulated a legitimate, nondiscriminatory reason for awarding the roles to Paul, Surrick, and Palko. The record shows that Lockheed Martin believed that they were more qualified than Deering for the respective roles because they had experience in the relevant legal areas. App.19-21; R.Doc.141, at 2-4. That is enough at this stage. *See, e.g.*, *Carter v. Atrium Hosp.*, 997 F.3d 803, 810 (8th Cir. 2021); *Sallis v. Univ. of Minn.*, 322 F. Supp. 2d 999, 1006 (D. Minn. 2004), (employer's "burden . . . is 'not onerous,' and can be satisfied

47

by showing that plaintiff, even if qualified, was a poor fit, or another candidate was a better fit[.]"), *aff'd*, 408 F.3d 470 (8th Cir. 2005). Deering asserts that the District Court never identified Lockheed Martin's nondiscriminatory reason. In fact, the District Court recognized Lockheed Martin's evidence that Deering "did not have the breadth of experience preferred for the job" and had mismanaged two jury trials. App.783; R.Doc.164, at 21.

Deering also misstates the record in arguing that it is "completely devoid of any information regarding Paul's qualifications." Deering Br. 48. The key differentiator was experience in the relevant legal area (international and preferably transactional), and Paul undisputedly had that experience. App.19-20; R.Doc.141, at 2-3. Deering herself testified that Paul's specialization was "[i]nternational law" and, in particular, international law relating to "contracts." App.284; R.Doc.152, at 33.

Deering's challenge to Surrick's qualifications is also untrue. Lockheed Martin did not rely solely on Surrick's "resume," as her brief claims. It submitted sworn testimony from Lavan detailing the subject-matter experience desired for that role—FCA, FCPA, securities, intellectual property, trade secrets, and international trade compliance matters—and attesting that Surrick possessed it. App.20; R.Doc.141, at 3; *see also* App.412; R.Doc.152-1, at 27. Deering erroneously suggests that Surrick's resume casts doubt on Lavan's view. On the contrary, the resume confirms Surrick's years of experience concentrating on government investigations, including

48

securities laws, FCPA disputes, accounting and healthcare fraud, trade secrets, and further shows that she was seconded from her law firm to Lockheed Martin for 18 months to work on compliance, government contracts, and litigation matters. App.735; R.Doc.136-3, at 2. Surrick's obvious qualifications explain why she was on the succession plan for the Litigation & Compliance VP slot in 2016 and 2017. *See* Sep.App.284-87; R.Doc.136-2, at 2-5.

### C. Deering did not establish that Lockheed Martin's reason for selecting other candidates was pretextual.

At *McDonnell Douglas*'s third step, Deering had to show that Lockheed Martin's articulated reason for choosing the other individuals was pretextual. As the District Court recognized, she did not do so. Again, she does not even challenge Lockheed Martin's reasons for hiring Palko. Nor did she ever offer any evidence to question Paul's or Surrick's qualifications or experience.[3] So summary judgment on her race-discrimination claim was proper. *Rose-Maston*, 133 F.3d at 1110 (granting summary judgment where plaintiff offered no evidence to refute that "the person ultimately hired . . . was more qualified").

Deering argues that Lockheed Martin supposedly provided shifting reasons for its decision. Deering Br. 8-9, 49. Not so. Deering's first supposed evidence of

---

[3] At most, Deering cites two pages from Lavan's deposition to try to cast doubt on Surrick's qualifications. That exchange shows, though, that Surrick's departure from the company was not about her qualifications, but communications issues between her and Lavan. App.461; R.Doc.152-1, at 76.

the shifting reasons—Dunnings's alleged testimony about why Deering was not promoted—is grossly mischaracterized. To start, this argument is a red herring because Dunnings was not a decisionmaker for the VP roles; Lavan was. App.663; R.Doc.152-2, at 41. In any event, Dunnings did not testify that Deering was not promoted because she was unwilling to move. App.671-72; R.Doc.152-2, at 49-50. Her testimony did not address any specific VP role or why Deering had not been promoted to one of the three VP roles at issue. App.672-73; R.Doc.152-2, at 50-51. Dunnings at most opined about factors that could affect VP promotions in general.

Next, Deering contends that Lavan did not determine whether she was qualified. The record shows the opposite. Lavan knew that Deering was not on the succession plans, had worked exclusively as a labor-and-employment attorney since 2012, and was responsible for substantial adverse jury verdicts in the only two cases she took to trial between 2015 and 2017, showing poor judgment. App.19; R.Doc.141, at 2. Deering also argues that the District Court should have found a fact issue on pretext because two other African American in-house lawyers testified that they had never had a career discussion with Lavan. Deering Br. 55. Once again, Deering mischaracterizes the record. There is no evidence that Lavan had career discussions with white peers, but not African Americans. In fact, Lavan testified that she relied on business area general counsel to identify qualified candidates for roles, that there was a robust HR process to develop succession plans for VP roles,

50

and that there were several African Americans on succession plans. App.412, 416; R.Doc.152-1, at 27, 31. Deering herself was a potential candidate for a VP role in labor and employment, but the job was not open. App.466; R.Doc.152-1, at 81.

Deering also asserts that she had more experience than Surrick overseeing complex litigation. Deering Br. 50. The record does not support that claim, and it ignores that Deering, unlike Surrick, lacked recent experience on the pertinent litigation and compliance issues (FCA, FCPA, securities, etc.). App.20; R.Doc.141, at 3; App.285; R.Doc.152, at 34; App.735; R.Doc.136-3, at 2.

Deering's argument boils down to her own say-so. But courts reject plaintiffs' unsupported claims to be "better qualified than the other candidates who were selected," and refuse to sit as "super-personnel departments" to make such improper judgments. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 705 (8th Cir. 2005). Even if Deering had shown she had relatively similar qualifications—which the record positively refutes—that would still not be sufficient: "'relatively similar qualifications' do not create a material issue of fact as to pretext." *Torgerson*, 643 F.3d at 1049. The disparity must be wide enough to show that "no reasonable person . . . could have chosen the candidate selected over the plaintiff for the job in question." *Id.* (citation omitted). Deering comes nowhere close.

Deering's also takes aim at an assortment of Lockheed Martin's supposed shortcomings—none involving Deering herself—to try to show racial bias in some

Appellate Case: 23-2853    Page: 62    Date Filed: 01/18/2024 Entry ID: 5354401

way. Deering Br. 52-56. Again, Deering mischaracterizes the record. For instance, Deering claims that Lockheed Martin violated its own policy by not posting the VP roles, but misleadingly fails to include the actual policy, which does not apply to VP roles.[4] Regardless, the only three roles at issue here were outside Deering's area of specialty, and she was not on a succession plan for them. App.412, 417; R.Doc.152-1, at 27, 32.

Deering's so-called me-too or corroborating evidence is equally misleading and does not establish pretext. First, Deering's reference to the alleged number of complaints filed against Lockheed Martin proves nothing. There was no evidence of any claims that were against the same decisionmaker, within the legal department, or otherwise similar to Deering's claims.

Second, Deering's assertion that 5,000 African Americans filed a race-discrimination claim against Lockheed Martin is also baseless. That case involved two individuals (not in-house lawyers) who filed a race-discrimination class action. The class claims were dismissed by now-Supreme-Court-Justice Jackson because there was no commonality among the proposed class. *Ross v. Lockheed Martin Corp.*,

---

[4] Deering's then-counsel showed a portion of a policy about posting of jobs, which was Exhibit 5 in Michele Hill's deposition, but never submitted the policy into the District Court record (underscoring that this is a novel, unpreserved argument). The policy expressly applies only to roles at Director and below, which is below VP. App.403; R.Doc.152-1, at 18; *see also* Lockheed Martin Mot. to Supp. Record.

No. 16-cv-2508 (KBJ), 2020 WL 4192566, at *11 (D.D.C. July 21, 2020). There was never a finding of discrimination even for the two individual plaintiffs.

Further, Deering's so-called diversity numbers do not establish pretext. Deering makes speculative assertions about reductions in the number of African American VPs and in-house lawyers, but cites no statistics or evidence that African Americans were treated any differently from whites.[5] The cases cited—only one of which was Eighth Circuit—considered comparative statistics only as part of a series of other relevant evidence, including racial epithets by management. *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1102 (8th Cir. 1988). There are no remotely similar facts here.[6]

Moreover, Eighth Circuit precedent makes clear that while background evidence of alleged discriminatory practices may sometimes be relevant, the evidence must create a reasonable inference of discrimination "within the context of each case's respective facts." *McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1101-

---

[5] Although Deering claims that Lavan had not promoted an African American to a VP role, she presented no facts about the specific roles, qualifications for those roles, or candidates that should have been considered. The record demonstrates that the few VP roles that arose were unique roles with specific requirements, and there are multiple African Americans on succession plans for future VP roles. App.416-18; R.Doc.152-1, at 31-33. Deering also mischaracterizes Lavan's testimony about Bastian; Lavan specifically testified that Bastian advocated for people of color in his department. App.434; R.Doc.152-1, at 49.

[6] In addition, these cases predate this Court's clarification that there is no higher standard for summary judgment in employment cases. *Torgerson*, 643 F.3d at 1043.

Appellate Case: 23-2853     Page: 64     Date Filed: 01/18/2024 Entry ID: 5354401

02 (8th Cir. 2005) (citation omitted).  In *McPheeters*, the Court explained that other complaints of discrimination were properly excluded because there was no record that they involved similar circumstances.  The Court could not conclude that the district court abused its discretion as it "was in a unique position to adjudge the relevance and probative value of the testimony."  *Id.* at 1102 (citation omitted).

Next, Deering points to a declaration by the outside lawyer who litigated *Braden* and believes she was unfairly criticized.  But Deering has not appealed her performance-review claim, and the undisputed record showed Deering's white manager, Deering, and outside counsel were all equally criticized for the *Braden* verdict. App.329; R.Doc.152, at 78.  Criticism of an outside lawyer who lost a $51.6 million single-plaintiff jury verdict is hardly evidence of race discrimination.  There was no evidence of any other lawyer who lost a jury verdict of this magnitude or was treated differently by Lavan.

Deering relies on cases like *Bennett v. Nucor Corp.*, 656 F.3d 802 (8th Cir. 2011), and *Sandoval v. Am. Bldg. Maint. Indus. Inc.*, 578 F.3d 787 (8th Cir. 2009), in support of her "me-too" evidence, but they involved hostile-work-environment claims and evidence of similar harassment of other relevant employees.  Even if Deering's allegations about other employees' experiences at Lockheed Martin or the subjectivity of the promotion process were accurate, none provides any support on the key issue here:  whether the motivation behind the challenged decisions not to

promote *Deering* to three specific non-labor-and-employment VP roles was her race rather than a nondiscriminatory judgment about the candidates' qualifications. *See, e.g.*, *Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023) ("Boston's 'me too' evidence is insufficient [to show pretext] because she has not shown that these individuals received the same discipline under the same circumstances from the same person."); *Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 865 (8th Cir. 1997) ("Chock has not shown any connection between the other employee's complaints . . . and any proof that Northwest discriminated against him in any of the instances of which he complains."), *abrogated in part on other grounds by Torgerson*, 643 F.3d 1031; *Cox v. First Nat'l Bank*, 792 F.3d 936, 940 (8th Cir. 2015) ("[S]ubjectivity alone does not render an employment decision infirm." (citation omitted)). For example, Michele Hill's testimony concerned alleged misplacement in a lower-level job when she was hired in 2004. App.524, 537; R.Doc.152-3, at 4, 17. This allegation has no connection to the promotion decisions Deering challenges. Lavan was not even General Counsel in 2004. App.390; R.Doc.152-1, at 5.

Lockheed Martin chose candidates that were better qualified than Deering for these VP roles. Summary judgment was proper. *See, e.g.*, *Carter*, 997 F.3d at 810; *Nelson v. USAble Mut. Ins. Co.*, 918 F.3d 990, 994 (8th Cir. 2019).

## CONCLUSION

For all these reasons, the District Court's judgment should be affirmed.

Appellate Case: 23-2853     Page: 66     Date Filed: 01/18/2024 Entry ID: 5354401

Dated:  January 17, 2024

Respectfully submitted,

*s/ Michael S. Burkhardt*

MICHAEL S. BURKHARDT
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA  19103
(215) 963-5000

JOSEPH G. SCHMITT
NILAN JOHNSON LEWIS PA
250 Marquette Avenue South, Suite 800
Minneapolis, MN  55401
(612) 305-7500

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
(202) 739-3000

*Counsel for Appellee Lockheed Martin Corporation*

56

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with type-volume limits because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains 12,979 words.

I further certify that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

In accordance with Circuit Rule 28A(h)(2), I certify that this brief has been scanned for viruses and is virus-free.

Dated: January 17, 2024                    *s/ Michael S. Burkhardt*
                                           Michael S. Burkhardt

                                           *Counsel for Appellee*
                                           *Lockheed Martin Corporation*

Appellate Case: 23-2853     Page: 68     Date Filed: 01/18/2024 Entry ID: 5354401

## CERTIFICATE OF SERVICE

I certify that, on this January 17, 2024, the foregoing Brief of Appellee was filed electronically through the appellate CM/ECF system with the Clerk of the Court. All counsel of record in this case are registered CM/ECF users.

*s/ Michael S. Burkhardt*
Michael S. Burkhardt

*Counsel for Appellee*
*Lockheed Martin Corporation*