# No. 23-2853

# In the
# United States Court of Appeals
# for the Eighth Circuit

Daniel'la Deering,

*Plaintiff-Appellant,*

vs.

Lockheed Martin, a Maryland Corporation;

*Defendant-Appellee,*

Maryanne Lavan, an Individual,
Kenneth Bastian, an Individual,

*Defendants.*

On Appeal from the United States District Court
for the District of Minnesota
Civ. No. 20-cv-01534
Honorable David S. Doty

## APPELLANT'S REPLY BRIEF

Daniel R. Olson (#389235)
Danielle W. Fitzsimmons (#391130)
BASSFORD REMELE
100 South Fifth Street, Suite 1500
Minneapolis, MN 55402-1254
(612) 333-3000
dolson@bassford.com
dfitzsimmons@bassford.com

*Attorneys for Appellant*

2024 – BACHMAN LEGAL PRINTING – PHONE (612) 339-9518

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................. 1

   I.    THIS COURT HAS JURISDICTION OVER ALL ORDERS
      WHICH DEERING APPEALS ........................................................ 1

      A.    The Merger Doctrine Encompasses all Interlocutory
           Orders into the Designated Appealable Judgment .................... 2

      B.    This Court Can Consider Post-Judgment Orders
           Because Lockheed Suffered No Prejudice .............................. 5

   II.   DISMISSAL IS AN INAPPROPRIATE DISCOVERY
      SANCTION AND AN ABUSE OF THE COURT'S
      INHERENT POWERS ................................................................. 7

      A.    The District Court's Dismissal Under Rule 37(b) was
           Improper .......................................................................... 8

      B.    The District Court Abused its Discretion by Invoking
           its Inherent Authority ....................................................... 9

           1.    The District Court Abused its Discretion by
                Failing to Sufficiently Consider Lesser
                Sanctions ................................................................ 9

           2.    The District Court Ignored Sworn Affidavits
                from Deering's Counsel Refuting any
                Malfeasance ............................................................ 10

   III.  A CONTINUANCE SHOULD HAVE BEEN GRANTED IN
      LIGHT OF FORMER COUNSEL'S SWORN
      STATEMENTS ....................................................................... 12

   IV.  THE DISTRICT COURT SHOULD HAVE GRANTED
      DEERING LEAVE TO REQUEST RECONSIDERATION
      OF THE CASE-ENDING SANCTIONS MOTION ........................ 14

i

V.    THE DISTRICT COURT ABUSED ITS DISCRETION BY
      GRANTING ATTORNEYS' FEES AS AN ADDITIONAL
      SANCTION ........................................................................ 16

VI.   THE  DISTRICT  COURT  ERRED  IN  GRANTING
      PARTIAL SUMMARY JUDGMENT ............................................... 17

      A.    Deering Established a Prima Facie Case Because She
            was Qualified for the VP Positions ........................................... 17

      B.    Deering Established Pretext ..................................................... 21

            1.    Lockheed's Stated Reasons for its Failure to
                  Promote are not Worthy of Credence ........................... 21

            2.    Deering Presented Evidence to Establish that
                  Lockheed's Racial Animus Motivated its Failure
                  to Promote ..................................................................... 24

CONCLUSION ....................................................................................... 27

Appellate Case: 23-2853     Page: 3     Date Filed: 02/08/2024 Entry ID: 5361870

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ash v. Cvetkov*,
739 F.2d 493 (9th Cir. 1984) ...................................................................4

*Beadle v. City of Omaha*,
983 F.3d 1073 (8th Cir. 2020) ..............................................................3, 4

*Bergstrom v. Frascone*,
744 F.3d 571 (8th Cir. 2014) ...................................................................8

*Boogaerts v. Bank of Bradley*,
961 F.2d 765 (8th Cir. 1992) ............................................................ 11, 12

*Boston v. TrialCard, Inc.*,
75 F.4th 861 (8th Cir. 2023) ..................................................................26

*Brewington v. Keener*,
902 F.3d 796 (8th Cir. 2018) .................................................................16

*Burgess v. Suzuki Motor Co.*,
71 F.3d 304 (8th Cir. 1995) .....................................................................5

*Chock v. Nw. Airlines, Inc.*,
113 F.3d 861 (8th Cir. 1997) .................................................................26

*Davis v. KRAK-TV, Inc.*,
421 F.3d 699 (8th Cir. 2005) .................................................................23

*Dindinger v. Allsteel, Inc.*,
853 F.3d 414 (8th Cir. 2017) .................................................................26

*DuBose v. State of Minnesota*,
893 F.2d 169 (8th Cir. 1990) ..............................................................3, 4

*Estes v. Dick Smith Ford, Inc.*,
856 F.2d 1097 (8th Cir. 1998) ...............................................................25

*Fair v. Ark. Pub. Emps. Ret. Sys.*,
111 F. Supp. 2d 1140 (E.D. Ark. 2000) .................................................18

Appellate Case: 23-2853     Page: 4     Date Filed: 02/08/2024 Entry ID: 5361870

*Gleghorn v. Melton,*
    195 F. App'x 535 (8th Cir. 2006) ........................................................................10

*Greer v. St. Louis Reg'l Med. Ctr.,*
    258 F.3d 843 (8th Cir. 2001) ...........................................................................3

*Halasa v. ITT Educ. Servs., Inc.,*
    690 F.3d 844 (7th Cir. 2012) ...........................................................................6

*Hunt v. City of Minneapolis, Minn.,*
    203 F.3d 524 (8th Cir. 2000) ...........................................................................9

*In re CenturyLink Sales Pracs. & Sec. Litig.,*
    No. 17-2795 (MJD/KMM), 2019 WL 4082945 (D. Minn. Aug. 29, 2019)........13

*Keefer v. Provident Life & Acc. Ins. Co.,*
    238 F.3d 937 (8th Cir. 2000) ........................................................................8, 9

*Kiel v. Select Artificials, Inc.,*
    169 F.3d 1131 (8th Cir. 1999) ........................................................................23

*King v. Turner,*
    No. 05-CV-388 (JRT/FLN), 2007 WL 1219308 (D. Minn. Apr. 24, 2007) .......16

*Lightner v. Catalent CTS (Kansas City), LLC,*
    89 F.4th 648 (8th Cir. 2023) ..........................................................................15

*Link v. Wabash Railroad Company,*
    370 U.S. 626 (1962)........................................................................................12

*Martin v. DaimlerChrysler Corp.,*
    251 F.3d 691 (8th Cir. 2001) ................................................................ 8, 9, 10

*McPheeters v. Black & Veatch Corp.,*
    427 F.3d 1095 (8th Cir. 2005) ........................................................................25

*Miller v. Dugan,*
    764 F.3d 826 (8th Cir. 2014) ..........................................................................17

*Rydder v. Rydder,*
    49 F.3d 369 (8th Cir. 1995) ............................................................................13

iv

*Safco Prod. Co. v. Welcom Prod., Inc.*,
  799 F. Supp. 2d 967 (D. Minn. 2011)...................................................10

*Sere v. Bd. of Trs. of Univ. of Ill.*,
  852 F.2d 285 (7th Cir. 1988) ..........................................................4, 5

*Smith v. Barry*,
  502 U.S. 244 (1992).......................................................................5, 6

*Stephens v. Jessup*,
  793 F.3d 941 (8th Cir. 2015) ...............................................................6

*Torgerson v. City of Rochester*,
  643 F.3d 1031 (8th Cir. 2011) ........................................... 18, 23, 24

## Rules

D. Minn. L.R. 6.1(a)........................................................................13

D. Minn. L.R. 7.1(j) ........................................................................14

Fed. R. App. P. 3 ...........................................................................2, 3

Fed. R. Civ. P. 37(b)–(c)....................................................................8

## Other Authorities

16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
  Federal Practice and Procedure § 3949.4 (4th ed. 2008)......................3

*Clear and Convincing Evidence*, Black's Law Dictionary (11th ed. 2019).......10

EVIDENCE, Clear and Convincing, Black's LawDictionary (11th ed. 2019)....10

Appellate Case: 23-2853     Page: 6     Date Filed: 02/08/2024 Entry ID: 5361870

## INTRODUCTION

Instead of countering the merits of Appellant Daniel'la Deering's legal arguments, Appellee Lockheed Martin focused most of its attention on disparaging Deering at every turn. This was an obvious attempt to distract the Court from the many errors made by the district court below, specifically: the failure to consider lesser sanctions before dismissing her case; diminishing the fact that it was Deering who pushed the Anaplan production forward, which undercuts any argument of clear-and-convincing misconduct; abusing its discretion in denying Deering's continuance and reconsideration request; rubber-stamping Lockheed's fee application; and applying incorrect legal standards on summary judgment.

Stripping away Lockheed's various hyperbolic distractions and focusing solely on the legal issues on appeal, it is clear that this Court should reverse this case and remand for further proceedings.

## ARGUMENT

### I.  THIS COURT HAS JURISDICTION OVER ALL ORDERS WHICH DEERING APPEALS.

Lockheed incorrectly argues that this Court does not have jurisdiction over the entry of partial summary judgment, and the three-post judgment orders: the order denying permission to seek reconsideration, issued on August 1, 2023; the order granting Lockheed's motion for attorney's fees, issued on the August 23, 2023; and the order awarding attorney's fees, issued on October 2, 2023. Lockheed's

1

arguments fail for two reasons: (1) the order for partial summary judgment merged into the final order issued on July 17, 2023, and the July 18, 2023, Judgment; and (2) Lockheed failed to allege it was prejudiced by Deering's appeal of the three post-judgment orders.

## A. The Merger Doctrine Encompasses all Interlocutory Orders into the Designated Appealable Judgment.

The notice of appeal must designate the judgment, or the appealable order, from which the appeal is taken. Fed. R. App. P. 3(c)(1)(B). To vest this court with jurisdiction, an appellant must comply with the requirements of Federal Rule of Appellate Procedure 3 and "designate the judgment, order, or part thereof being appealed." *Id.* The notice of appeal encompasses all orders, that for purposes of appeal, merge into the designated judgment or appealable order. It is not necessary to designate those orders in the notice of appeal. Fed. R. App. P. 3(c)(4).[1]

An appellant may designate only part of a judgment or appealable order by expressly stating that the notice of appeal is so limited. Without such an express

---

[1] The Advisory Committee Notes are instructive here. They provide: "[i]n an effort to avoid the misconception that it is necessary or appropriate to designate each and every order of the district court that the appellant may wish to challenge on appeal, Rule 3(c)(1) is amended to require the designation of 'the judgment—or the appealable order—from which the appeal is taken,' and the phrase 'or part thereof' is deleted." Fed. R. App P. 3 advisory committee's notes to 2021 amendment. Importantly, the case law cited by Lockheed predates the 2021 amendment.

statement, specific designations do not limit the scope of the notice of appeal. Fed. R. App. P. 3(6).

Generally, an appeal from a final judgment permits "review of all earlier interlocutory orders," 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3949.4 (4th ed. 2008), because those earlier interlocutory orders merge into the judgment for appeal. *Beadle v. City of Omaha*, 983 F.3d 1073, 1075–76 (8th Cir. 2020) (citing *Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 846 (8th Cir. 2001) ("Ordinarily, a notice of appeal that specifies the final judgment in a case should be understood to bring up for review all of the previous rulings and orders that led up to and served as a predicate for that final judgment.").

Here, both the order issued on July 17, 2023, and the subsequent judgment entered on July 18, 2023, encompass all interlocutory orders that merged into the final judgment of the case, including the entry of partial summary judgment. The notice of appeal does not specifically list each and every order from which Deering appeals because she is not required to do so under the Federal Rules of Appellate Procedure.

Lockheed's entire argument to the contrary is erroneously premised on one exception to the merger doctrine that applies to dismissals predicated on a failure to prosecute. This Court held in *DuBose v. State of Minnesota* that dismissal for <u>failure</u>

Appellate Case: 23-2853    Page: 9    Date Filed: 02/08/2024 Entry ID: 5361870

to prosecute under Fed. R. Civ. P. 41(b) bars review of earlier entered interlocutory rulings whether the failure was purposeful or inadvertent. 893 F.2d 169, 171 (8th Cir. 1990). In a subsequent case, this Court clarified the harms that *DuBose* sought to avoid: allowing a dismissal for failure to prosecute to create "an avenue for reaching issues which are not subject to interlocutory appeal as of right" and encouraging "would-be appellants from interlocutory orders to delay for the purpose of dismissal for lack of prosecution and review of otherwise unreviewable decisions." *Beadle*, 983 F.3d at 1076 (quoting *Ash v. Cvetkov*, 739 F.2d 493, 497 (9th Cir. 1984)). This Court's limited holding in *Dubose* has no application to Deering's appeal as this is not a failure-to-prosecute case. The only two cases cited by Lockheed addressed the limited exception for failure-to-prosecute claims. *See Dubose*, 893 F.3d 169; *Sere v. Bd. of Trs. of Univ. of Ill.*, 852 F.2d 285, 288 (7th Cir. 1988).

Lockheed's reliance on the Seventh Circuit's holding in *Sere* is even-more misplaced. In *Sere*, the plaintiff-appellant's section-1981 claim was first dismissed on a Rule 12(b)(6) motion, and the entire case was later dismissed for failure to prosecute after the plaintiff-appellant failed to appear for his deposition, despite a court order to do so. 852 F.2d at 289. On appeal, the plaintiff-appellant did not contest the Rule 12(b)(6) dismissal in his opening brief. The Seventh Circuit,

therefore, held that he waived the argument and declined to consider the merits of his section-1981 claim. *Id.* at 288–89.

Unlike *Sere*, Deering addressed the summary judgment order in both her Notice of Appeal and in her principal brief; thus, she did not waive any argument. Consequently, Lockheed's assertion that this Court lacks jurisdiction over the partial summary judgment order should be rejected out of hand.

## B. This Court Can Consider Post-Judgment Orders Because Lockheed Suffered No Prejudice.

Lockheed argues that this Court does not have jurisdiction over three related orders that were issued after Deering served her Notice of Appeal. Lockheed fails, however, to articulate it would be prejudiced by the Court's review of the three post-judgment orders.

"The Eighth Circuit traditionally construes notices of appeal liberally, but the intent to appeal the judgment in question must be apparent and there must be no prejudice to the adverse party." *Burgess v. Suzuki Motor Co.*, 71 F.3d 304, 307 (8th Cir. 1995).

Courts will liberally construe the requirements of Rule 3 of the Federal Rules of Appellate Procedure. *Smith v. Barry*, 502 U.S. 244, 248 (1992). "Thus, when papers are 'technically at variance with the letter of [Rule 3], a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires.'" *Id.* (citation omitted). "While a notice must

5

specifically indicate a litigant's intent to seek appellate review, the purpose of this requirement is to ensure that the filing provides sufficient notice to other parties' and the courts." *Id.* "Thus, the notice afforded by a document . . . determines the document's sufficiency as a notice of appeal." *Id*; *see also Halasa v. ITT Educ. Servs., Inc.*, 690 F.3d 844, 849 (7th Cir. 2012) (appellant's "opening appellate brief was filed within 30 days of the district court's cost order, and it clearly gives notice of his intent to contest that ruling. We therefore have jurisdiction over this aspect of [his] appeal.").

Lockheed cites *Jessup* for the proposition that a notice, which identifies a specific district court order, precludes an appellant from appealing an order that she did not identify in the notice. (Lockheed Br. at 5–6.) This reliance is misplaced. In *Jessup*, the two defendants move separately to dismiss plaintiff's complaint. *Stephens v. Jessup*, 793 F.3d 941, 943 (8th Cir. 2015). One defendant was dismissed on July 29, 2013, and the other was dismissed on July 30, 2013, by a separate order. *Id*. Appellant only identified the July 30 order pertaining to one defendant; thus, the Eighth Circuit held it lacked jurisdiction over the July 29 order pertaining to the other defendant. *Id.* Those were two separate <u>final</u> orders involving two separate defendants. By contrast, the post-judgment orders involved here relate to only one defendant and are related to a single final judgment.

6

Moreover, Lockheed did not assert that it would be prejudiced by this Court's review of the three post-judgment orders. Nor can it. Deering's statement of the issues clearly identifies the issues related to the post-judgment orders, and her amended designation of the record includes pleadings related to the three post-judgment orders. Lockheed also fully addressed the merits of Deering's appeal in its brief. Lockheed suffered no prejudice and can make no argument to the contrary.

Finally, Deering's appeal, taken as a whole, manifested an intent to seek review of all post-judgment orders. The district court denied Deering's request for permission to file a motion to reconsider on August 1, 2023. Deering filed her notice of appeal on August 14, 2023, which, construed liberally, manifested her intent to appeal the denial of her motion for reconsideration. The district court issued its order granting Lockheed its attorneys' fees on August 23, 2023. Deering's August 29, 2023, statement of the issues includes the district court's order granting Lockheed its attorney's fees. Thus, under *Barry*, Deering's statement of the issues provided sufficient notice of her intent to seek review of all post-judgment orders. Therefore, this Court has jurisdiction of the three post-judgment orders.

## II. DISMISSAL IS AN INAPPROPRIATE DISCOVERY SANCTION AND AN ABUSE OF THE COURT'S INHERENT POWERS.

Turning to the substantive merits of the appeal, Lockheed's attempt to substantiate the district court's case-ending sanctions order rings hollow. As the district court stated, dismissal as a discovery sanction is available through the

7

inherent powers of the court or after the non-moving party has been subject to a motion to compel. Fed. R. Civ. P. 37(b)–(c). To exercise the inherent powers of the court, a district court is required to (1) find by clear and convincing evidence that misconduct occurred and (2) consider lesser sanctions before issuing a dismissal. *Keefer v. Provident Life & Acc. Ins. Co.*, 238 F.3d 937, 940–41 (8th Cir. 2000); *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001). And to dismiss the case pursuant to Rule 37(b), the court must first issue a motion to compel. *Bergstrom v. Frascone*, 744 F.3d 571, 576 (8th Cir. 2014).

### A. The District Court's Dismissal Under Rule 37(b) was Improper.

Contrary to Lockheed's characterization of the dismissal order, the district court cited to Rule 37(b) as grounds for its dismissal. (App.793; R. Doc. 246 at 8; Add.31.) The rule established by the Eighth Circuit states that dismissal as a discovery sanction pursuant to Rule 37(b) is <u>only</u> available if there is: "(1) an order compelling discovery, (2) a willful violation of the order, and (3) prejudice to the other party." *Bergstrom*, 744 F.3d at 576. There is no dispute that the district court never issued a motion to compel, or that Ms. Deering acted in contravention of an order to compel. As a matter of law, the case-ending sanction issued pursuant to Rule 37(b) is incorrect and should be reversed.

8

**B. The District Court Abused its Discretion by Invoking its Inherent Authority.**

Setting aside the district court's procedural errors warranting reversal, the district court also abused its discretion in invoking its inherent authority to dismiss the case. While a district court may utilize its inherent authority to issue case-ending sanctions, these inherent powers are not without guardrails. A court must find that a party engaged in misconduct by clear and convincing evidence. *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001). Additionally, the court must analyze whether lesser sanctions would sufficiently address the misconduct in question. *Keefer*, 238 F.3d at 940–41. Here, the district court disregarded both of these guardrails and should be reversed as a result.

**1. The District Court Abused its Discretion by Failing to Sufficiently Consider Lesser Sanctions.**

Despite this Court's requirement that district courts analyze "whether a lesser sanction is available or appropriate," the district court failed to analyze or examine any lesser sanctions—much less determine why lesser sanctions would be futile. *Keefer*, 238 F.3d at 940–41. This analysis is not discretionary or optional and is necessary to maintain the rights of the litigant. *Id.* Indeed, it is well-established that the "'ultimate sanction [dismissal with prejudice] . . . should only be used when lesser sanctions prove futile.'" *Hunt v. City of Minneapolis, Minn.*, 203 F.3d 524, 527 (8th Cir. 2000) (citation omitted).

9

Instead of analyzing whether a lesser sanction would suffice, the district court summarily concluded that "[a] lesser sanction would provide no more than a slap on the wrist." (App.795; R. Doc. 246 at 10; Add.33.) The court did not identify any lesser sanctions it considered, or explain why those lesser sanctions would not suffice. *See Gleghorn v. Melton,* 195 F. App'x 535, 537 (8th Cir. 2006) (noting that a "district court need not impose the least onerous sanction, fairness requires it to consider whether a lesser sanction is available or appropriate before dismissing a case with prejudice."). This incomplete analysis is factually identical to the sanctions order at issue in *Gleghorn*, which this Court reversed and remanded as an abuse of discretion. *Id.* The Court should do the same here.

### 2. The District Court Ignored Sworn Affidavits from Deering's Counsel Refuting any Malfeasance.

But even if the district court appropriately considered lesser sanctions, the sanctions order should still be reversed because the district court abused its discretion in assessing Deering's intent. A court may only impose the extreme sanction of dismissal upon a finding of "clear and convincing evidence that the misconduct occurred." *Martin*, 251 F.3d at 694. The burden of proving misconduct by clear-and-convincing evidence is a heavy one. *Safco Prod. Co. v. Welcom Prod., Inc.*, 799 F. Supp. 2d 967, 973 (D. Minn. 2011); EVIDENCE, Clear and Convincing, BLACK'S LAW DICTIONARY (11th ed. 2019); *Clear and Convincing Evidence*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("Evidence indicating that the thing to

10

be proved is highly probable or reasonably certain. This is a greater burden than preponderance of the evidence.").

Lockheed failed to acknowledge the heightened clear-and-convincing-evidence standard required to support a finding of misconduct. Instead, Lockheed simply repeats the district court's findings as dogma. In reality, the district court failed to address or consider the evidence presented by Deering and her attorneys. Specifically, the district court failed to consider the three declarations of Deering's prior counsel explaining that the Anaplan information was not timely produced due to the fault of counsel—not Deering. And, as Deering made clear in her declaration, she immediately demanded that counsel produce the Anaplan information when she learned of her counsel's mistake. This is a critical fact ignored by Lockheed. Lockheed would have this Court believe that the Anaplan information was discovered through its own investigatory efforts; in reality, it was Deering who effectuated the production that ultimately led to the dismissal of her case. She cannot be said to have intentionally withheld evidence that she ultimately produced.

The authority cited by Lockheed is also inapposite. Lockheed unconvincingly cites to this Court's opinion in *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992). *Boogaerts* involved an extensive discovery dispute and multiple motions to compel. 961 F.2d at 766. The district court found that plaintiff's counsel failed to abide by court orders to supplement discovery, and this Court affirmed. *Id.*

11

at 768. That is not the case here. Deering's former counsel did not ignore any order from the court; they ignored Deering. Deering's counsel acknowledged that they were provided the documents at issue by Deering but failed to produce them. Deering was under the impression that the relevant documents were produced, and once she discovered that they had not been, she immediately remedied the error, apparently at her own peril. *Boogaerts* is distinguishable as a result.

Lockheed's reliance on *Link v. Wabash Railroad Company* is equally misplaced. 370 U.S. 626, 633–34 (1962). In *Link*, the plaintiff's attorney failed to attend the pre-trial hearing with the Court and the plaintiff's case was dismissed based on a failure to prosecute. *Id.* But again, the *Link* facts are entirely different than the facts of this case.

Tellingly, Lockheed ignores both the affidavits of Deering's former counsel and the fact that Deering was the one who ultimately caused the Anaplan documents to be produced months after initially providing them to her counsel. Because there is no clear and convincing evidence of misconduct, the district court's imposition of case-ending sanctions amount to an abuse of discretion and should be reversed.

## III. A CONTINUANCE SHOULD HAVE BEEN GRANTED IN LIGHT OF FORMER COUNSEL'S SWORN STATEMENTS.

The district court's denial of Deering's continuance request is also grounds for reversal. Lockheed does not deny that Deering was prejudiced by the denial of a continuance. Rather, Lockheed seeks to distract the Court from this prejudice by

12

mischaracterizing the facts surrounding the continuance request. *Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir. 1995).

"[A] party who seeks a continuance must show good cause." *In re CenturyLink Sales Pracs. & Sec. Litig.*, No. 17-2795 (MJD/KMM), 2019 WL 4082945, at *2 (D. Minn. Aug. 29, 2019) (quoting D. Minn. L.R. 6.1(a)). Deering easily met this burden. Deering moved for a continuance of the sanctions hearing to replace her conflicted counsel and address new allegations contained within the Lockheed's reply brief. As a result of the district court's abuse of discretion, Deering was forced to be represented by counsel with an indisputable conflict of interest at a hearing for case-ending sanctions. She also was not permitted to address the new allegations which ended up being grounds for the district court's order.

Lockheed does not dispute that Deering was prejudiced by the district court denying the continuance request. Instead, Lockheed asserts that Deering's motion for a continuance was untimely and suggests that any conflict of interest facing her attorneys could have been remedied through a new attorney who filed a notice of appearance in early June. These arguments fail for two reasons.

First, the request was timely made. Once it became apparent to Deering's counsel that her case may be dismissed as a result of the failure of counsel to produce the Anaplan documents, they moved for a continuance so that she could obtain new counsel. By denying the continuance request, the district court turned Deering's

former counsel into fact witnesses providing testimony against their client's interests. In fact, the bulk of the district court's questioning at the hearing amounted to a cross examination of Deering's counsel. (App.129–30; R. Doc. 248 at 14–15.) This fundamentally compromised Deering's representation at the hearing and violated Minn. R. Prof. Resp. 3.7(a).

Moreover, Deering's newer counsel, Attorney William Gilbert, filed his notice appearance only one week before the motion for case ending sanctions was brought. He would not have been sufficiently prepared to argue a case-ending sanctions motion in a case that had been litigated for years. To suggest that Deering was not prejudiced by the continuance denial because she also had another attorney added to the case at the last minute to prepare for trial is disingenuous.

The Court should reverse the district court for this additional abuse of discretion as well.

## IV. THE DISTRICT COURT SHOULD HAVE GRANTED DEERING LEAVE TO REQUEST RECONSIDERATION OF THE CASE-ENDING SANCTIONS MOTION.

The district court also improperly denied Deering the opportunity to seek leave to request reconsideration of the case-ending sanction order. A party must show "compelling circumstances" to obtain permission to file a motion to reconsider. D. Minn. L.R. 7.1(j). Deering did so in several respects. Deering's request for leave stemmed in part from the fact that she was not allowed to submit a

14

sur-reply to Lockheed's reply brief, which raised new allegations of misconduct as bases for case-ending sanctions. There is no dispute that Lockheed raised these new allegations for the first time in its reply brief. Deering had no opportunity to respond to allegations of perjury prior to the Court taking the sanction motion under advisement. And by denying Deering's request for reconsideration, the district court denied Deering the opportunity to respond a second time. *See Lightner v. Catalent CTS (Kansas City), LLC*, 89 F.4th 648, 655 (8th Cir. 2023) (district court abused its discretion when it denied motion for leave to file a sur-reply without explanation).

Additionally, Deering demonstrated compelling circumstances by virtue of her conflicted counsel. Her former counsel presented the district court with a clear conflict of interest prior to the sanctions hearing. The district court then proceeded to cross examine her former counsel during the hearing and then based its decision to sanction Ms. Deering in part on the answers given by her conflicted attorneys. (App.129–30; R. Doc. 248 at 14–15.) This is a violation of Minn. R. Prof. Resp. 3.7(a), which the district court could have remedied by granting Deering's new counsel leave to request reconsideration. But the district court rejected Deering's request without appreciably considering these compelling circumstances. Because the district court abused its discretion once again in denying Deering's request for reconsideration, the Court should reverse on this ground as well.

## V. THE DISTRICT COURT ABUSED ITS DISCRETION BY GRANTING ATTORNEYS' FEES AS AN ADDITIONAL SANCTION.

The district court also abused its discretion in granting Lockheed's motion for attorney's fees. The district court awarded Respondent $93,192.96 in attorneys' fees for a single motion, and awarded those fees against Deering personally rather than against her offending counsel. (App.808; R. Doc. 284 at 7; Add.46.) There is no doubt that an award of fees must be based on hours "reasonably expended." *King v. Turner*, No. 05-CV-388 (JRT/FLN), 2007 WL 1219308, at *1 (D. Minn. Apr. 24, 2007). Spending nearly 200 hours on a single motion is surely excessive. (R. Doc. 275.) Even so, Lockheed insists that because the district court reduced its fees by 20% that the award must de facto be reasonable.

*Brewington v. Keener*, a case cited by Lockheed, is illustrative of this point. 902 F.3d 796, 805 (8th Cir. 2018). There, the district court reduced "requested attorneys' fees from $41,920 to $16,500, *citing duplicative work*." *Id.* (emphasis added). The court in *Brewington* also found that "[o]ne attorney charged $17,000—40.6 percent of the requested total—for e-mails alone. This amount is questionable." *Id.*

The district court provided no such critical analysis in this case. Instead, it summarily reduced the award by twenty percent, without rhyme or reason beyond the assumption that some "overlap" might have occurred. (App.808; R. Doc. 284 at 7; Add.46.) Respondent's original memorandum and reply memorandum amounted

16

to only 45 pages of briefing. 197.7 hours of work for 45 pages of briefing is simply staggering. *Miller v. Dugan*, 764 F.3d 826, 832 (8th Cir. 2014) ("[H]ours that are excessive, redundant, or otherwise unnecessary must be excluded from the district court's determination of reasonable time expended on the case.") Yet the district court largely awarded the fees requested.

Because the district court abused its discretion in granting Lockheed's motion for attorney's fees, the Court should reverse the district court in this respect as well.

## VI. THE DISTRICT COURT ERRED IN GRANTING PARTIAL SUMMARY JUDGMENT.

The district court also erred in granting Lockheed partial summary judgment on Deering's race-discrimination claim. First, the district court erred in concluding that Deering could not establish a prima facie case for failure to promote. The district court further erred by ignoring Deering's significant evidence establishing pretext.[2] Each error is addressed in turn.

### A. Deering Established a Prima Facie Case Because She was Qualified for the VP Positions.

On appeal, the only contested element of Deering's prima facie case is whether she was qualified for the two VP positions, the International and Litigation

---

[2] As stated in Deering's opening brief, the district court further erred in concluding that Lockheed had a legitimate, non-discriminatory reason for passing Deering over for promotion. Without waiving that argument, Deering focuses her arguments in reply on her prima facie case and pretext.

17

VP roles.[3] Importantly, both the district court and Lockheed applied the incorrect standard to determine if Deering satisfied this element. (Lockheed Br. at 11 ("She had no evidence that she was *more qualified* for the VP positions than the individuals selected.") (emphasis added); (App.783; R. Doc. 164 at 21; Add.21.) ("Deering has presented no facts to establish that she was *more qualified* for the vice president positions than the candidates who were hired in her stead.") (emphasis added).) The question, however, is if Deering presented an issue of fact as to whether she "met the minimum qualifications" for the role. *Fair v. Ark. Pub. Emps. Ret. Sys.*, 111 F. Supp. 2d 1140, 1144 (E.D. Ark. 2000); *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) ("This circuit, however, has squarely rejected the proposition that a plaintiff must prove her *relative* qualifications to meet her prima facie burden.").

Deering met the minimum requirements, as set by Lockheed, for both VP positions. Lockheed argues extensively that Deering's prima facie case fails because she "offer[ed] no evidence of the qualifications necessary for [these] position[s]." (Lockheed Br. at 47.) Ironically, when arguing that Deering met the minimum qualifications for both positions, Deering relied on the qualifications that Lavan identified in her declaration, which Lockheed filed in support of its summary

---

[3] Lockheed repeatedly mentions a third position, VP General Counsel, Space, but Deering has not raised any issue regarding that position on appeal and, as such, does not address it here.

judgment motion to identify the qualifications for the position. Lockheed fails to explain why the declaration that it provided should be ignored.

For the International VP role, Lavan alleges only that she was looking for candidates who had transactional experience. (App.20–21; R. Doc. 141 at 3–4.) In the five years before joining Lockheed, Deering worked in various areas of the law, including contracts, corporate governance, real estate, environmental, acquisitions, securities, government contracting, interstate commerce, transportation law and regulatory compliance. (App.1; R. Doc. 153 at 1.) Then, for the next ten years, Deering practiced as a generalist attorney at Lockheed. (*Id.*) And even after Deering was assigned to a labor and employment position at Lockheed, she continued to support the compliance department, securities department, and the medical team. (App.278; R. Doc. 152 at 101:17–24.) Lockheed's argument conspicuously ignores *fifteen years* of Deering's career and mischaracterizes Deering's responsibilities in her last six years at Lockheed. The record evidence clearly establishes that Deering met the minimum qualifications for the International VP role; she had transactional experience. To the extent Lockheed challenges the veracity of the evidence Deering presents, there is a material issue of fact, precluding summary judgment.

Likewise, Deering met the minimum qualifications for the Litigation VP role. According to Lavan's declaration, she sought someone who had the experience and qualifications to oversee major litigation and compliance matters. (App.20;

R. Doc. 141 at 3.) Deering's resume establishes that she had this experience. (App.11–12; R. Doc. 153 at 12–13.) Lockheed asserts that Deering did not directly manage an FCA case or securities matter and had not worked on FCPA or IP matters since 2012. (Lockheed Br. at 46.) Deering testified, however, that she did work on FCA matters, directly managed FCPA matters, and had significant experience and involvement in intellectual-property matters. (App.285; R. Doc. 152, at 34.) Additionally, Lockheed presents no evidence that "directly" managing certain matters within a certain timeframe was ever a qualification. There is zero evidence in the record that the white candidate who was hired ever directly managed these types of matters. (*See* App.735; R. Doc. 136-3.) In fact, Ms. Surrick's resume is void of any reference to FCA and intellectual-property matters and fails to identify what role she played in FCPA and securities matters and when she handled those matters. (*Id.*)

Finally, Lockheed repeatedly argues that it relies on succession plans for filling senior positions and states that Deering was not on the succession plan for either VP role. (Lockheed Br. 44, 46, 49.) This argument misses the point. Deering had the qualifications for both VP roles; thus, there was no basis for Lockheed to keep Deering off the succession plans, thereby depriving her of a deserved promotion.

20

Lavan's declaration, upon which Lockheed heavily relies, identifies the qualifications for the VP roles, and Deering submitted evidence that she met these minimum qualifications. Despite Lockheed's baseless proclamations to the contrary, Deering established a prima facie case and the district court erred in concluding otherwise.

## B. Deering Established Pretext.

### 1. Lockheed's Stated Reasons for its Failure to Promote are not Worthy of Credence.

Lockheed attempts to avoid its shifting reasons for failing to promote Deering by minimizing Dunning's testimony and arguing that she was not a decisionmaker. (Lockheed Br. at 50.) But when Dunnings was questioned on why Deering was not promoted, she did not testify that she did not know because she was not a decisionmaker. (App.672–73; R. Doc. 152-2 at 190:7–191:3.) Instead, Dunnings testified that Deering was unwilling to move. Lockheed cannot avoid this testimony simply because it is inconsistent with its current narrative.

Second, Lavan's stated reasons for failing to promote Deering are not supported by the record evidence. Lockheed argues that Lavan knew Deering was not qualified for the two VP positions because Lavan knew Deering: (1) was not on the succession plan; (2) worked exclusively as a labor and employment attorney; and (3) was responsible for adverse jury verdicts in 2015 and 2017. (Lockheed Br. at 50.) These arguments turn a blind eye to the record evidence. Deering had practiced

for fifteen years before assuming the labor and employment role, and Lavan admits to being completely unaware of Deering's experience during those fifteen years—ten of which were spent at Lockheed. (App.419; R. Doc. 152-1 at 125:12–24.) Moreover, Lockheed does not contest that the 2015 verdict actually resulted in a huge victory for Lockheed, including an award of attorney fees. (App.334; R. Doc. 152 at 323:25–324:7.) Lockheed also does not contest that Lavan herself characterized the 2017 verdict as a "runaway jury" and internally assured her colleagues that the award would be "significantly reduced through appeals." (App.520; R. Doc. 135-7.) The blame Lockheed now seeks to place on Deering is nothing more than a red herring.

Third, Lockheed's assertion that it believed Paul and Surrick were more qualified than Deering is not credible. As to Paul, Lockheed failed to offer any evidence regarding his qualifications. Lockheed cites only to Lavan's self-serving declaration in which she proclaims, without any facts or documents in support, "Mr. Paul had the requisite experience for this role." (App.19–20; R. Doc. 152 at 33.) There is zero record evidence establishing Paul's experience, let alone supporting Lockheed's alleged belief that he was more qualified than Deering.

As to Surrick, Lockheed relies only on her resume and Lavan's proclamation that "Ms. Surrick had the requisite experience for this role." (App.20; R. Doc. 141 at 3.) Surrick's resume, however, makes clear that she had little to no litigation

22

experience. (App.735; R. Doc. 136-3.) Moreover, Lavan alleges that the role required experience with FCA and IP matters, but Surrick's resume does not identify such experience. (*Id.*)

Finally, the case law upon which Lockheed relies is inapposite. Lockheed cites *Davis v. KRAK-TV, Inc.*, 421 F.3d 699 (8th Cir. 2005), for the proposition that courts reject plaintiffs' unsupported claims to be better qualified than the selected candidates because courts refuse to sit as "super-personnel departments." (Lockheed Br. at 51.) In *Davis*, this Court held that it will not review "'the wisdom or fairness of business judgments made by employers, *except to the extent those judgments involve intentional discrimination*.'" 421 F.3d at 705 (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (emphasis added)). Since *Davis*, this Court has further clarified that a plaintiff may establish intentional discrimination and pretext by showing "that the employer's explanation is unworthy of credence." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (quotation omitted). This is exactly what Deering has done.

Lockheed unconvincingly cites *Torgerson* for the proposition that "relatively similar qualifications" do not create a material issue of fact as to pretext. (Lockheed Br. 51.) In *Torgerson*, the plaintiffs were firefighters who were ranked on a point scale based on the results of a (1) written exam, (2) physical agility test and (3) veterans' points. 643 F.3d 1031, 1048–49 (8th Cir. 2011). The plaintiffs ranked

40th and 45th, far below the hired candidates' rankings, and did not contest the written or physical exam. *Id.* Under these facts, this Court held that even the plaintiffs' similar qualifications, compared to the applicants hired, did not create a material issue of fact to establish pretext. *Id.* at 1049.

Here, Lockheed does not assert that it made hiring decisions based on objective test scores with Deering ranking far below Surrick and Paul. Rather, Lavan relied on <u>subjective</u> criteria and proclaims that the chosen candidates were more qualified. But Lockheed presented no evidence regarding Paul's qualifications, and Surrick's resume establishes that she had <u>less</u> relevant experience than Deering. Pursuant to Eighth Circuit precedent, Deering established pretext by showing that Lockheed's stated reason for the failure to promote is not worthy of credence.

### 2. Deering Presented Evidence to Establish that Lockheed's Racial Animus Motivated its Failure to Promote.

To establish that Lockheed's racial animus motivated its failure to promote, Deering presented evidence that: (1) Lockheed failed to follow its policies and relied on subjective hiring criteria; (2) Lockheed's legal department lacks racial diversity; (3) Deering's coworkers corroborated her allegations of Lockheed's racial animus; and (4) Deering submitted significant "me too" evidence.

In response to the statistical evidence relied upon by Deering to establish Lockheed's race-based animus, Lockheed does not challenge the statistics. Nor does Lockheed cite a single case to argue that such evidence is not relevant to determining

24

pretext. Rather, Lockheed attempts to discredit Deering's argument via hyperbole, referencing her "so-called diversity numbers" and "speculative assertions." (Lockheed Br. at 53.) But federal case law makes clear that an employer's failure to hire diverse candidates is relevant evidence to establishing pretext. *See, e.g.*, *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1105 (8th Cir. 1998).

Next, to avoid the substantial evidence that Deering presented of the racial bias her colleagues experienced at Lockheed, Lockheed cites to one case—*McPheeters v. Black & Veatch Corp.*, 427 F.3d 1095, 1101 (8th Cir. 2005)—which does not support Lockheed's specious argument. In *McPheeters*, this court held that the district court did not abuse its discretion when it sought to limit the plaintiff's use of a list of other complaints of discrimination in the workplace at trial. *Id.* at 1101. Importantly, the district court did not order a blanket exclusion of this evidence. *Id.* Rather, the court recognized that "an employer's discriminatory policies or practices may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive . . . the evidence must nevertheless assist the development of a reasonable inference of discrimination within the context of each case's respective facts." *Id.* (Internal citations and quotations omitted). The district court, therefore, left open the possibility of plaintiff making a more specific record showing the relevance of the other complaints of discrimination. *Id.* at 1102. Thus, the holding in *McPheeters*

25

supports Deering's argument that her coworkers' complaints regarding race discrimination at Lockheed are relevant to establishing pretext.

Finally, Lockheed attempts to discredit Deering's "me too" evidence. Lockheed cites *Boston v. TrialCard, Inc.*, 75 F.4th 861, 868 (8th Cir. 2023), where the court held that plaintiff's "me too" evidence was insufficient to establish pretext because the other complainants had different jobs and reported to different supervisors than plaintiff.[4] But here, Hill and Stamps-Henderson were also in-house attorneys whom Lavan failed to promote. Importantly, in *Boston*, this Court stated: "This Court has noted that 'me too' evidence of other discrimination victims can be relevant because 'an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination.'" *Id.* (quoting *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 424 (8th Cir. 2017)). Deering's "me-too" evidence supports a finding of pretext.

Lockheed's mischaracterization of the record to fit its preferred narrative should be scrutinized. Deering established she met the minimum qualifications for the two VP positions. At the very least, a genuine issue of material fact exists, precluding summary judgment. Moreover, the record shows that Lockheed's

---

[4] Lockheed also relies on *Chock v. Nw. Airlines, Inc.*, 113 F.3d 861, 865 (8th Cir. 1997) where plaintiff pointed to "me too" evidence that clearly had no connection to the discrimination plaintiff complained of. In contrast, the testimony of Hill and Stamps-Henderson is identical to Deering's allegations of Lavan's race-based animus.

justification was nothing more than pretext. Between the weak record of the chosen candidates' qualifications, Lavan's self-serving declaration, and Deering's compelling "me too" and corroborating evidence, Deering established pretext. This Court should reverse the district court's grant of partial summary judgment.

## <u>CONCLUSION</u>

As it currently stands, Deering lost her day in court through correcting the errors of her counsel. That is a terrible precedent to set, and now this Court has the chance to correct it. For the foregoing reasons, Deering respectfully requests that this Court reverse the district court's erroneous sanctions order, continuance denial, request-for-reconsideration denial, attorneys'-fee award, and grant of summary judgment and remand for further proceedings on all accounts.

**BASSFORD REMELE**
*A Professional Association*

Dated: February 8, 2024    By: /s/ Daniel R. Olson
           Daniel R. Olson (MN #389235)
           Danielle W. Fitzsimmons (MN #391130)
        *Attorneys for Appellant Daniel'la Deering*
        100 South 5th Street, Suite 1500
        Minneapolis, MN 55402-1254
        Telephone:  612-333-3000
        Facsimile:   612-333-8829
        dolson@bassford.com
        dfitzsimmons@bassford.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 23(a)(7)(B)(i) because it contains 6,321 words, excluding the parts of the brief excepted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Office 365 in Times New Roman font style in size 14.

Dated: February 8, 2024      /s/ Daniel R. Olson
                                      Daniel R. Olson (MN #389235)

Appellate Case: 23-2853    Page: 34    Date Filed: 02/08/2024 Entry ID: 5361870

## CERTIFICATE OF VIRUS FREE

Pursuant to Rule 28A(h)(2) of the Eighth Circuit Rules of Appellate Procedure, the undersigned counsel for Appellant Daniel'la Deering certifies that the attached Appellant's Reply Brief has been scanned for computer viruses and is virus-free.

Dated: February 8, 2024

/s/ Daniel R. Olson
Daniel R. Olson (MN #389235)

Appellate Case: 23-2853   Page: 35   Date Filed: 02/08/2024 Entry ID: 5361870

**Daniel'la Deering v. Lockheed Martin**
**Case No. 23-2853**

**CERTIFICATE OF SERVICE**
**FOR DOCUMENTS FILED USING CM/ECF**

I hereby certify that on February 8, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: February 8, 2024        /s/ Daniel R. Olson
                               Daniel R. Olson (MN #389235)

30